AMERICAN BROADCASTING COMPANIES, INC., et al., Petitioners,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,

Hughes Television Network, Inc. et al., Intervenors.

No. 79–1261.

United States Court of Appeals, District of Columbia Circuit.

Argued April 16, 1980.
Decided Oct. 9, 1980.

Joseph M. Kittner, Washington, D. C., with whom Norman P. Leventhal, Joseph DeFranco and Howard Monderer, Washington, D. C., were on the brief, for petitioners.

Jules M. Perlberg, Chicago, Ill., with whom David J. Lewis, Washington, D. C., Alfred A. Green, New York City, and Edgar Mayfield, Bedminster, N. J., were on the brief, for intervenor AT&T.

Daniel M. Armstrong, Associate Gen. Counsel, F. C. C., Washington, D. C., with whom David J. Saylor, Deputy Gen. Counsel, and Jack David Smith, Counsel, F. C. C., Washington, D. C., were on the brief, for respondents. Barry Grossman, William D. Caston and J. Mark Manner, Attys., U. S. Dept. of Justice, Washington, D. C., also entered appearances for respondent U. S.

Jay E. Ricks, Washington, D. C., with whom R. Clark Wadlow and Gardner F. Gillespie, Washington, D. C., were on the brief, for intervenors Hughes Television Network, Inc., et al.

J. Laurent Scharff, Washington, D. C., was on the brief for intervenor Ass'n of Independent Television Stations, Inc. Richard M. Singer and Jack N. Goodman, Washington, D. C., also entered appearances for intervenor Ass'n of Independent Television Stations, Inc.

Donald E. Ward, Washington, D. C., was on the brief for intervenor Robert Wold Co., Inc.

James F. Fitzpatrick, David H. Lloyd and Robert S. Thorpe, Washington, D. C., were on the brief for intervenor Commissioner of Baseball.

Warren C. Zwicky, Washington, D. C., was on the brief for intervenor Storer Broadcasting Co.

Phillip R. Hochberg, Washington, D. C., was on the brief for intervenor National Basketball Assn. Douglas M. Carnival, Washington, D. C., also entered an appearance for intervenor National Basketball Assn.

E. William Henry, Washington, D. C., and Lawrence P. Keller, Washington, D. C., were on the brief for intervenor Independent Television News Assn.

Harry M. Plotkin, George H. Shapiro, Gary M. Epstein, Cynthia L. Hathaway and Theodore D. Frank, Washington, D. C., were on the brief for intervenors Madison Square Garden Center, Inc., et al.

Before TAMM and WILKEY, Circuit Judges, and RONALD N. DAVIES,* Senior District Judge for the District of North Dakota.

Opinion for the court filed by Circuit Judge TAMM.

Circuit Judge WILKEY concurs in the result.

TAMM, Circuit Judge:

The three television networks petition for review of a portion of a Federal Communications Commission order rejecting American Telephone and Telegraph Company's (AT&T) tariff filing for television broadcast service. Petitioners challenge the Commission's finding that AT&T's part- and full-time service categories are "like communication services" under 47 U.S.C. § 202(a) (1976). We find the Commission properly applied the correct standard in making its likeness determination and accordingly we dismiss the petitions.

## I. BACKGROUND

This case involves AT&T's Transmittal No. 12793 to FCC Tariff No. 260, Series 7000 local channel and Type 7001 interexchange channel and station connection television service. This service offers one directional channel service to distributors of television programming.[1] The service consists of three basic elements: local channels (television loops), which connect the point of program origination (e. g., television stu-

---

* Sitting by designation pursuant to 28 U.S.C. § 294(b) (1976).

1. The major networks, ABC, CBS, and NBC, regional and local television groups, and television sports broadcasters have been the principal users of this service.

dio or sports stadium) to an AT&T television operating center (TOC); interexchange channels (IXC), which link the TOCs; and station connections, which transmit the signal from TOCs to local stations for broadcast to viewers.[2]

AT&T has offered two service categories from the beginning of the transmission service in 1948. Originally, customers could opt for either a monthly service in which they purchased at prescribed rates a minimum of eight hours service each day or the hourly occasional service with charges computed based on the amount of time purchased. In 1973, upon Commission acceptance of a stipulated tariff structure, *see American Telephone & Telegraph Co.*, 44 F.C.C.2d 525 (1973), AT&T changed the categories, giving purchasers the option of buying 24-hour "full-time" service for a minimum period of a month or using the occasional (now called "part-time") hourly rates.

In 1977, in response to Commission directives concerning cost principles, *see American Telephone & Telegraph Co.*, 61 F.C.C.2d 587 (1976) [hereinafter cited as *Docket 18128*], aff'd in part and vacated in part sub nom. *Aeronautical Radio, Inc. v. FCC*, No. 77–1333 (D.C.Cir.June 24, 1980), AT&T filed Transmittal 12793 to its Series 7000 tariff schedules. The filing retained the same basic categories that had been established in 1973 but extended to one year the minimum period for full-time service. The tariff also raised prices sharply for part-time service and both raised and lowered full-time rates.[3] AT&T believed

that the filing "provide[s] structures and rate levels which more closely reflect the costs incurred in the provision of full-time and part-time television services and . . . improve[s] the revenue/cost relationship for the total service category. Moreover, it is designed to meet the requirements of [*Docket 18128*]." Letter from W. E. Albert, AT&T, to Secretary, FCC, at 2 (Aug. 1, 1977) (Cover letter to Transmittal 12793). AT&T filed thirteen volumes of supporting cost data.

The major networks supported the filing. As users of the full-time service, they would benefit from the lower tariffs. Others were less satisfied. Independent television stations, sports networks, and other users of part-time service urged the Commission to reject the tariff. They objected violently to the proposed tariffs because their costs would increase substantially.

The Commission rejected the tariff, citing seven independent deficiencies in the filing.[4] *American Telephone & Telegraph Co.*, 67 F.C.C.2d 1134 (1978). The Commission found that AT&T's full- and part-time service categories are "like communication services" within the meaning of section 202(a) of the Communications Act, 47 U.S.C. § 202(a) (1976).[5] AT&T thus had the burden of introducing cost data to justify the differences in rates. The Commission rejected the tariff because AT&T did not offer the necessary data.

■ Two independent findings supported the Commission's decision that AT&T's service categories are "like communication

---

2. An example here may be helpful: if a station is broadcasting a football game in Dallas to viewers in Washington, D. C., the television signals would be transmitted via local channels from the stadium to the area TOC, via the IXC network from Dallas to Washington, and via station connections from the Washington IXC to the station that broadcasts the game to local fans.

3. Specifically, the proposed tariff raised prices for full-time local channels and lowered the rates for IXC channels and station connections.

4. Most of these grounds concerned AT&T's failure to follow the strictures of *Docket 18128* regarding cost justification information, includ-

ing, among other things, AT&T's failure to supply basic cost allocation information and to include historical full cost rates. *American Telephone & Telegraph Co.*, 67 F.C.C.2d 1134, 1135 (1978). These findings by the Commission have not been appealed.

5. This provision states in relevant part: "It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device. . . ." 47 U.S.C. § 202(a) (1976).

services." First, the Commission held that continued use of these categories violated its decision in *Sports Network Inc. v. American Telephone & Telegraph Co.*, 25 F.C. C.2d 560 (1968), *aff'd sub nom. Hughes Sports Network, Inc. v. American Telephone & Telegraph Co.*, 25 F.C.C.2d 550 (Rev.Bd.1970), *aff'd*, 34 F.C.C.2d 691 (1972) [hereinafter cited as *SNI*]. In that case, the Hearing Examiner found that the monthly and occasional interexchange channels were like services whose rate structure was unduly discriminatory under 47 U.S.C. § 202(a).[6] Second, the Commission determined that full- and part-time services were not "different in any material functional respect." *American Trucking Associations, Inc. v. FCC*, 377 F.2d 121, 127 (D.C.Cir. 1966), *cert. denied*, 386 U.S. 943, 87 S.Ct. 973, 17 L.Ed.2d 874 (1967). This finding of functional equivalency requires a proponent of two services to justify any difference in costs for those services.[7]

■■ Petitioners, the three major networks, seek review of these two findings. They contend that changes in technology and the service offerings make the *SNI* decision inapplicable in the present case. They also argue that the Commission erred in applying the narrow "functional equivalency" test to this case. We find that the Commission properly applied the functional equivalency test in this proceeding. More-

over, the Commission's finding that AT&T's full- and part-time offerings are like services is supported by substantial evidence. Having reached this conclusion, we express no opinion on the continuing viability of the *SNI* decision.[8]

## II. DISCUSSION

As a threshold issue, the Commission asserts that this court lacks jurisdiction to hear this petition. The networks challenge only two of the several independent reasons given by the Commission for rejection; even if the challenges are upheld, the rejection order will stand. The Commission therefore asserts that petitioners are challenging only the subsidiary findings of the Commission and not a final order. *See American Telephone & Telegraph Co. v. FCC*, 602 F.2d 401 (D.C.Cir.1979) (dismissing petition for review of certain findings in Commission proceeding because other independent reasons for action were unchallenged).

■ We disagree. The rejection of a tariff is clearly a final order reviewable in the court of appeals under 47 U.S.C. § 402(a)[9] and 28 U.S.C. § 2342 (1976).[10] *See Papago Tribal Authority v. FERC*, 628 F.2d 235, at 241 n.16 (D.C.Cir.1980). Section 2342 gives this court exclusive jurisdiction to "set aside, *suspend (in whole or in part)*" any

---

**6.** The Commission in its rejection order noted that the *SNI* case dealt only with interexchange channels but found "the rationale of the 'like services' finding in *SNI* ... clearly applicable to Series 7000 full and part-time services and the comparable IXC, local channel and station connection rate elements at issue herein." American Telephone & Telegraph Co., 67 F.C.C.2d at 1166 n.30.

**7.** The Commission denied AT&T's motion for rehearing. American Telephone & Telegraph Co., 70 F.C.C.2d 2031 (1979).

**8.** Petitioners further allege that suggestions made by the Commission amount to a prescription of rates in violation of § 205(a) of the Communications Act. 47 U.S.C. § 205(a) (1976). We believe that the Commission's suggested improvements, *see* American Telephone & Telegraph Co., 70 F.C.C.2d 2031, 2052–53 (1979), were simply that, placing AT&T under no obligation to adopt the improvements but only "to consider actively" the proposals. The

Commission explicitly postponed entering into a prescription hearing to await further filings from AT&T that would "provide an adequate record for prescription if [such] ... is deemed necessary ...." *Id.* at 2054 n.25.

**9.** Section 402(a) states in part: "Any proceeding to enjoin, set aside, annul or suspend any order of the Commission ... shall be brought as provided by and in the manner prescribed in chapter 158 of title 28." 47 U.S.C. § 402(a) (1976).

**10.** Section 2342 states:
   The court of appeals has exclusive jurisdiction to enjoin, set aside, suspend (in whole or in part), or to determine the validity of—
   (1) all final orders of the Federal Communication [sic] Commission made reviewable by section 402(a) of title 47.
28 U.S.C. § 2342 (1976).

final order. 28 U.S.C. § 2342 (1976) (emphasis added). This grant gives the court the power to hear and suspend objectionable portions of a final order. Furthermore, these jurisdictional statutes are flexible. As Chief Judge Wright noted in *American Telephone & Telegraph Co. v. FCC*, 602 F.2d 401, 409 (D.C.Cir.1979), "Sections 402(a) and 2342 contain sufficient play to permit judicial intervention where it seems that an agency has departed from the normal course of its proceedings to make gratuitous prejudicial determinations or has otherwise cloaked the kinds of actions and harms normally associated with orders in nonreviewable garb." Petitioners make such a claim about the Commission's actions. We believe this action is properly before this court.

■ The procedural posture of this petition does present, however, questions concerning the proper standard for reviewing the Commission's actions. The order under review is the Commission's rejection of AT&T's tariff filing. This power to reject a tariff is limited; the tariff must be "so patently a nullity as a matter of substantive law . . . that administrative efficiency and justice are furthered by obviating any docket at the threshold . . . ." *Municipal Light Boards v. FPC*, 450 F.2d 1341, 1346 (D.C.Cir.1971), *cert. denied*, 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 445 (1972). *Cf. Delta Air Lines, Inc. v. CAB*, 543 F.2d 247 (D.C.Cir.1976).

■ In this proceeding, however, the rejection of the tariff is not at issue. Petitioners seek a determination by this court of the legality of certain findings by the Commission. These findings will have prospective application only; as noted above, even if petitioners triumph on their claims, the tariff will not be accepted by the Commission. Accordingly, we believe the criteria for reviewing the rejection of a tariff are not applicable in this case. Instead, the general provisions for judicial review of agency action as set forth in the Adminis-

trative Procedure Act, 5 U.S.C. § 706 (1976), are controlling.[11] Given this standard of review, we turn to the merits of petitioners' claims.

Petitioners claim that the Commission erred in using the functional equivalency test in determining whether full- and part-time services are "like." They assert that this standard is vague and inconsistent with criteria used in other Commission decisions. Furthermore, they point to various factors mentioned in similar decisions made by other governmental agencies and allegedly ignored by the Commission and contend that this relevant information would have been available to the Commission had it held a hearing on the question. We believe that the functional equivalency test is a proper criterion for likeness, that the proceeding before the Commission produced adequate airing of the relevant factors, and that the Commission's determination of likeness under this test is supported by substantial evidence.

■ Section 202(a) prohibits "unjust or unreasonable discrimination in charges" in the provision of "like communication services." 47 U.S.C. § 202(a). Under this provision, the Commission first determines whether the services are "like." This question is decided on a case-by-case basis. *Western Union International, Inc. v. FCC*, 568 F.2d 1012, 1018 n.11 (2d Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 299, 56 L.Ed.2d 785 (1978); *American Telephone & Telegraph Co. (WATS)*, 70 F.C.C.2d 593, 613–14 (1978).

■ A standard means for determining "likeness" is the functional equivalency test. Under this test as developed by the Commission, the inquiry centers on whether the services are "different in any material functional respect." *American Trucking Associations, Inc. v. FCC*, 377 F.2d 121, 127 (D.C.Cir.1966), *cert. denied*, 386 U.S. 943, 87

---

11. This provision requires us to "hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or . . . unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E) (1976).

S.Ct. 973, 17 L.Ed.2d 874 (1967).[12]  The test looks to the nature of the services offered to determine likeness; the perspective of the customer faced with differing services is often considered a significant factor.  *See American Telephone & Telegraph Co. (WATS)*, 70 F.C.C.2d 593, 609 & 614 (1978).

Despite petitioners' assertions, the functional equivalency test includes the proper elements necessary for making a determination of likeness under section 202(a).  By looking to the nature and character of the services in question, the test focuses the initial inquiry under section 202(a) on the similarity of the services.  Considerations of cost differentials and competitive necessity are properly excluded and introduced only when determining whether the discrimination is unreasonable or unjust.  *See Western Union International, Inc. v. FCC*, 568 F.2d 1012, 1019 n.15 (2d Cir.1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2854, 56 L.Ed.2d 785 (1978).

Having found the functional equivalency test to be the proper standard, we further believe the Commission had substantial evidence to support its finding.  The Commission noted that "[i]t is apparent from an examination of the face of AT&T's tariff and this filing that full time and part time users receive the identical transmission service." [13]  *American Telephone & Telegraph Co.*, 67 F.C.C.2d 1134, 1167 (1978).  The Commission found, and AT&T conceded, that customers regarded the full- and part-time service as the same, with cost considerations being the sole determining criterion.  *Id.*  Moreover, cost was the only reason some major customers such as the networks preferred full-time service.  Indeed, the substantial use of the part-time service by the networks demonstrated that they be-

lieved the services to be functionally equivalent.  *Id.* at 1168.

We find this evidence substantially supports the Commission's view that the services are functionally equivalent.  Customers apparently view the two services as the same, making their decisions about service solely on the basis of price.  This customer perception, in conjunction with petitioners' failure to demonstrate that the two services in fact satisfy different communications requirements, provides substantial support for the Commission's determination that the services are like.

Having made this showing, the Commission shifted the burden to AT&T to justify the discrimination.  In a decision not on review before this court, the Commission found that AT&T did not meet this burden.  It therefore rejected the tariff on this ground.

### III.  CONCLUSION

AT&T must now submit a new tariff for its Series 7000 service.  The ruling in this proceeding in no way prohibits AT&T from maintaining its present part- and full-time service categories.  It must now demonstrate, however, in the new filing that the discrimination between these categories is not unjust or unreasonable under 47 U.S.C. § 202(a) (1976).  The decision of the Commission is

*AFFIRMED.*

---

12.  Both courts and the Commission have relied on this test in making likeness determinations.  *See, e. g., Western Union International, Inc. v. FCC*, 568 F.2d 1012 (2d Cir. 1977), *cert. denied*, 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978); *American Telephone & Telegraph Co.* (Tariff FCC No. 267), 62 F.C.C.2d 774 (1977); American Telephone & Telegraph Co. (Hi/Lo), 55 F.C.C.2d 225 (1975), *aff'd mem. sub nom. Commodity News Services, Inc. v. FCC*, 561 F.2d 1021 (D.C.Cir.1977).

13.  Petitioners argue that part-time and full-time service users do not receive identical service because each service category has its own "dedicated" facilities.  This argument misses the point; both categories offer the exact same service, albeit over differently dedicated facilities.  The dedication argument is relevant in determining whether the discrimination is unjust or unreasonable.