238 F.3d 124 (2nd Cir. 2001)
 NATIONAL COMMUNICATIONS ASSOCIATION, INC., Plaintiff-Appellee-Cross-Appellant,
v.
AT&T CORP., Defendant-Appellant-Cross-Appellee.
 Docket Nos. 98-9673, 99-7023
August Term 2000
 UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT
 Argued: February 7, 2000
Decided: January 12, 2001
 
 Appeal from a February 27, 1998 judgment of the United States District Court for the Southern District of New York (Loretta A. Preska, District Judge), as supplemented on June 11, 1999, awarding plaintiff-appellee $2,194,431.84 in damages and pre-judgment interest after a jury found that defendant-appellant had unreasonably discriminated against plaintiff-appellee in the provision of like communication services in violation of 47 U.S.C. § 202(a).
 Affirmed.
 RICHARD C. YESKOO and THOMAS T. TAMLYN, JR., Fabricant & Yeskoo, LLP, New York, NY, and Maxwell M. Blecher, Alicia G. Rosenberg, and William C. Hsu, Blecher & Collins, P.C., Los Angeles, CA, for Plaintiff-Appellee.
 FREDERICK L. WHITMER, Esq., Pitney, Hardin, Kipp & Szuch, New York, N.Y., and David W. Carpenter, Charles W. Douglas, and D. Cameron Findlay, Sidley & Austin, Chicago, IL, for Defendant-Appellant.
 Before: WALKER, Chief Judge, MESKILL, and SOTOMAYOR, Circuit Judges.
 JOHN M. WALKER, Jr., Chief Judge:
 
 
 1
 Plaintiff-appellee National Communications Association, Inc. ("NCA") brought suit in the United States District Court for the Southern District of New York (Loretta A. Preska, District Judge), alleging, inter alia, that defendant-appellant AT&T Corp. ("AT&T") had unreasonably discriminated against NCA in the provision of like communication services in violation of 47 U.S.C. § 202(a).
 
 
 2
 At trial, the jury found for NCA and awarded $1.8 million in damages. The district court supplemented the judgment to include pre-judgment interest, for a total award of $2,194,431.84. The district court denied AT&T's motions for judgment as a matter of law and for a new trial. See National Communications Ass'n v. AT&T Corp., No. 92 Civ. 1735, 1998 WL 851588 (S.D.N.Y. Dec. 8, 1998) ("NCA II"). On appeal, AT&T argues principally that the evidence supporting the jury verdict was insufficient and that the district court erroneously instructed the jury regarding the burden of proof in a § 202(a) claim. We disagree with both contentions and now affirm.
 
 BACKGROUND
 
 3
 AT&T is a "common carrier" subject to the requirements of Title II of the Communications Act of 1934 ("CA" or "the Act"), 47 U.S.C. § 201 et seq. 47 U.S.C. § 153(10) (defining "common carrier"). Section 202 of the Act prohibits unreasonable discrimination by common carriers in the provision of like communication services. See 47 U.S.C. § 202(a). Pursuant to that statute, the FCC has promulgated regulations requiring common carriers to provide services to resellers on the same terms that such services are provided to end users. See Regulatory Policies Concerning Resale and Shared Use of Common Carrier Services and Facilities, 60 F.C.C.2d 261 (1976) ("Resale Rules"); see also AT&T Corp. v. FCC, 572 F.2d 17 (2d Cir. 1978) (upholding the FCC Resale Rules).
 
 
 4
 AT&T offers a long-distance service called Software Defined Network ("SDN") which it introduced in 1985 in order to provide dedicated network long distance service to large corporations. A few years later, AT&T began to offer a new technology, so-called "switched access," that allows users to access SDN through regular phone lines. Through this process SDN calls are sorted and routed through the local exchange carrier, rather than through special dedicated lines.
 
 
 5
 This innovation had an unintended consequence: it enabled a new group of resellers, those with no routing facilities of their own, known as "switchless" resellers, to provide SDN services to end-users. Due in part to AT&T's volume discounts, switchless resellers were then able to provide SDN services to small businesses for less than AT&T's direct price to those same end-users, while still making a profit. See National Communications Ass'n v. AT&T Corp., No. 92 Civ. 1735, 1998 WL 118174, at *13-14 (S.D.N.Y. March 16, 1998) ("NCA I") (describing NCA's resale of SDN). As a result, a large number of switchless resellers began subscribing to SDN in 1989-90.
 
 
 6
 AT&T's own end-user customers ("commercial customers") were serviced by a division of AT&T called the Business Sales Division ("BSD"). Initially, switchless resellers ("resellers") were also served by the BSD, but as the volume of resellers increased, AT&T moved the processing of reseller orders to a division called the Channel Development Operations Center ("CDOC"). The CDOC exclusively serviced resellers, while the BSD exclusively serviced commercial customers.
 
 
 7
 NCA, a reseller, signed a subscription agreement with AT&T on March 11, 1990 and placed its first orders for SDN in April of that year. Although AT&T told NCA that it would take approximately three months to set up its SDN network and an additional 30 days to add customers, AT&T admits that it did not provision NCA's orders as quickly as it had predicted. By the end of 1990, AT&T had processed only a fraction of NCA's orders. In 1991 and 1992, its provisioning speed improved.
 
 
 8
 NCA filed this action on March 10, 1992 claiming that AT&T had unjustifiably favored its own end-user customers over resellers such as NCA in processing orders for SDN. After pre-trial proceedings, its case consisted of various claims that AT&T had violated 47 U.S.C. §§ 201(b) and 202(a), as well as the FCC's Resale Rules.[1] See NCA II, 1998 WL 851588, at *1. A single § 202(a) discrimination claim is at issue in this appeal.
 
 
 9
 In support of its § 202(a) discrimination claim, NCA argued at trial that AT&T's answer to the arbitrage threat that resellers posed to its own SDN retail business was to intentionally discriminate against the resellers. It had, for example, given far fewer resources to CDOC than to the BSD. As a result of this and other discriminatory practices, NCA argued, orders from resellers took up to nine months to provision, as opposed to 30 to 40 days for orders from commercial customers. AT&T countered that the deluge of SDN orders it received in 1989 and 1990 resulted in equal delays for resellers and commercial customers.
 
 
 10
 On February 23, 1998, the jury, while rejecting NCA's claims under the resale rules and § 201(b), found for NCA on its § 202(a) claim and awarded $1.8 million in damages. In an opinion filed December 8, 1998, the district court denied AT&T's motions for judgment as a matter of law and for a new trial under Fed. R. Civ. P. 50(b) and 59. On June 11, 1999, the court entered a supplemental judgment awarding pre-judgment interest in the amount of $394,431.84, for a total judgment of $2,194,431.84. This appeal followed.
 
 DISCUSSION
 
 11
 We review de novo the denial of a motion under Rule 50(b), see DiSanto v. McGraw-Hill, Inc., 220 F.3d 61, 64 (2d Cir. 2000) (per curiam), and review the denial of a Rule 59 motion for abuse of discretion, see Daily v. Societe Generale, 108 F.3d 451, 458 (2d Cir. 1997) (following a jury verdict, "an appellate court will reverse a trial court's denial of a new trial motion if the denial constitutes an abuse of discretion").
 
 Section 202(a) provides:
 
 12
 It shall be unlawful for any common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage.
 
 
 13
 47 U.S.C. § 202(a). The district court instructed the jury, and the parties do not dispute, that a § 202(a) claim consists of three elements: (1) whether the services are "like"; (2) if so, whether the services were provided under different terms or conditions; and (3) whether any such difference was reasonable. See NCA II, 1998 WL 851588, at *1; see also MCI Telecomms. Corp. v. FCC, 917 F.2d 30, 39 (D.C. Cir. 1990). AT&T's principal arguments on appeal, and the only ones that merit discussion, are that: (1) the district court should have granted its motions to dismiss and for a new trial because there was insufficient evidence to support the jury's § 202(a) verdict, and (2) the district court erroneously instructed the jury that the burden of proving the third element of a § 202(a) claim rested with AT&T.[2] We disagree with both contentions.
 
 I.
 
 14
 In moving for judgment as a matter of law, AT&T faces a high bar:
 
 
 15
 Judgment as a matter of law may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor. In deciding such a motion, the court must give deference to all credibility determinations and reasonable inferences of the jury, and it may not itself weigh the credibility of witnesses or consider the weight of the evidence. Thus, judgment as a matter of law should not be granted unless (1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded persons could not arrive at a verdict against it.
 
 
 16
 DiSanto, 220 F.3d at 64 (quoting Galdieri Ambrosini v. Nat'l Realty & Dev. Corp., 136 F.3d 276, 289 (2d Cir. 1998)) (alterations omitted).
 
 
 17
 On appeal, AT&T argues only in passing, and unconvincingly, that the SDN services it provided to resellers and to commercial customers were not "like." The district court noted that "throughout the trial no one disputed that NCA was attempting to purchase the same SDN service . . . that commercial customers purchased." See NCA II, 1998 WL 851588, at *3. The only sufficiency issue, then, pertains to the second element of the § 202(a) claim: whether NCA presented enough evidence at trial upon which a reasonable jury could have found that AT&T discriminated between NCA and its commercial customers.
 
 
 18
 We believe the evidence, although not overwhelming, was sufficient to uphold the jury verdict under our deferential standard. Because a reasonable juror could have found a § 202(a) violation based entirely on evidence that AT&T unreasonably discriminated between resellers and commercial customers in the time it took to provision SDN services, we find the evidence of disparate delay sufficient to support liability.
 
 
 19
 As we have mentioned, NCA argued at trial that AT&T processed resellers' SDN orders in about nine months, as compared to orders from its commercial customers, which were provisioned in 30 to 40 days. In support of the nine-month figure, NCA points to testimony indicating that in 1990 it took "three to six months to provision SDN reseller orders on the network," and an additional three months for SDN usage to be recorded on bills and sent to the ultimate customers. On appeal, AT&T does not contest the figures for processing reseller orders; rather, it argues that its commercial customers experienced the same delays.
 
 
 20
 However, several pieces of evidence support NCA's contention that AT&T processed its commercial customers' orders more expeditiously. A memo from John Greco, Division Manager of CDOC, to Glenn Starr, Product Manager for SDN, states resellers' complaint that AT&T had been servicing its commercial customers in 30 to 60 days, as opposed to four to five months for resellers. While noting AT&T management's "assurances that all SDN customers are currently subjected to long intervals," Greco informed Starr that he could "no longer accept those assurances with confidence" and expressed concern that "there may be some legitimacy to resellers' complaints." In addition, Joseph Britell, SDN Marketing Manager, made a marginal note in 1990 on a fellow employee's draft speech next to a paragraph concerning provisioning intervals stating that "since November we have tracked our results which clearly indicate a less than 30-day interval." Brittell testified that the figure referred only to commercial customers. Moreover, Starr agreed at trial that in 1990 SDN service for commercial customers was being installed in 33 days, provided that the order did not require many optional features. And finally, a document prepared by Ray Robinson, Operations Vice President, noted that in 1990 AT&T had a "switched access featureless average cycle time of 33 days."[3]
 
 
 21
 The district court held, and the parties do not dispute, that "in order for NCA to recover damages, AT&T's conduct must have been willful." NCA II, 1998 WL 851588, at *1. We believe that there was also sufficient evidence on the basis of which a jury could reasonably have found that AT&T's discrimination was willful.
 
 
 22
 Unremarkably, AT&T viewed resellers as competitors. Various testimony and documentary evidence was presented to the effect that AT&T managers were concerned that resellers had an "arbitrage opportunity" and were "perverting the market." One internal AT&T memo notes that "resellers threaten both the marketing and pricing structures that serve as the foundation of our business." There was sufficient evidence for the jury to find that, as a result, AT&T decided to delay provisioning of SDN services to resellers. In response to a question concerning "reseller complaints that their orders weren't getting installed," Britell testified that SDN managers had a "strategy . . . to slow that process down" by "moving the resellers into a separate organization and contain[ing] them." Other evidence indicated a desire on the part of AT&T to make the SDN market less attractive to resellers, to "kill [the] arbitrage," to "elongate provisioning," and to "develop roadblocks to SDN resale."
 
 
 23
 To be sure, AT&T challenged this evidence and offered evidence to the contrary. But it was the jury's task to resolve evidentiary conflicts; ours is only to determine on the basis of the evidence presented by NCA whether a reasonable jury could have found it more likely than not that AT&T discriminated between resellers and its own commercial customers in its provisioning of SDN service. We think the evidence was sufficient to support such a finding.
 
 
 24
 Accordingly, we affirm the district court's denial of AT&T's 50(b) motion for judgment as a matter of law. We also do not disturb the district court's denial of AT&T's motion for a new trial pursuant to Rule 59; we find that the district court acted within its discretion.
 
 II.
 
 25
 The district court instructed the jury that, while NCA would bear the burden of proof on the first two of the three elements that comprise a § 202(a) claim, AT&T would bear the burden of proving the last one:
 
 
 26
 First, NCA must prove that both NCA and another AT&T customer or class of customers took services that are like one another. Second, if the services in question are like one another, NCA must prove that AT&T provided like services to another customer or class of customers under different terms or conditions than those offered or provided to NCA. And third, if NCA has proved these first two elements, then AT&T must prove that any difference in treatment with respect to the like services was not unreasonable or unjust.
 
 
 27
 NCA II, 1998 WL 851588, at *1 (emphasis added). AT&T argues that it was error for the court to have required it to bear the burden of showing that any discrimination was reasonable.
 
 
 28
 The Court of Appeals for the D.C. Circuit has stated in the § 202 context that "[i]f the services are 'like,' the carrier offering them has the burden of justifying the price disparity as reasonable." MCI, 917 F.2d at 39. Because the MCI court decided ultimately that the services were not "like" one another, its discussion of the burdens is dicta. However, in an earlier case, not cited by the parties, the same court held that the FCC did not err when it placed the burden of proof on the carrier to justify a difference in rates for like services. See Am. Trucking Ass'ns, Inc. v. FCC, 377 F.2d 121, 133 (D.C. Cir. 1966). The court in American Trucking justified the burden-shifting under § 202 as "in accord with rulings usually applied when a party comes forward with an affirmative defense to a prima facie illegality." Id. at 133.
 
 
 29
 The FCC in its amicus brief similarly characterizes a complaining party's proof of the first two "elements"--"likeness" of service and discrimination in treatment--as "establish[ing] a prima facie case of discrimination" requiring a justification from the carrier. The FCC's characterization is supported by, among other things, this court's recognition in Western Union Int'l Inc. v. FCC, 568 F.2d 1012 (2d Cir. 1977), that because the two services before us were "like," such that they shared a "functional similarity," there was "good cause to suspect that there was little justification for [a] large difference in the rates charged[.]" Western Union, 568 F.2d at 1017-18 & n.11.
 
 
 30
 The concept of the shifted burden as an affirmative defense is also found in the context of analogous anti-discrimination provisions. In Trailways of New England, Inc. v. Civil Aeronautics Bd., 412 F.2d 926, 932 & n.13 (1st Cir. 1969), the First Circuit Court of Appeals drew an analogy between the Federal Aviation Act of 1958 ("FAA"), 49 U.S.C. § 1374(b), the Interstate Commerce Act of 1887 ("ICA"), 49 U.S.C. §§ 10741(a) and (b), and the CA, and it held that the shifting of the "affirmative burden of showing...that the discrimination is justified" under FAA is analogous to rules under other non-discrimination provisions that "place[] upon the carrier the burden of disproving discrimination by the affirmative defense of competitive need, once the complaining party establishes a prima facie case of discrimination."
 
 
 31
 Persuaded by these authorities and the underlying rationales for assigning burdens, we hold that the district court properly placed the burden on AT&T to prove that any discrimination between resellers and its commercial customers in the provision of like SDN services was reasonable. See also Western Union, 568 F.2d at 1018-19 ("[O]nce the FCC demonstrated a basis for its determination of likeness, the burden shifted to the [party defending the disparity in treatment] to disprove the discrimination in their favor."); American Broad. Cos. v. FCC, 663 F.2d 133, 139 (D.C. Cir. 1980) (noting that once likeness and price difference had been shown, "the Commission shifted the burden to AT&T to justify the discrimination").
 
 
 32
 As its amicus brief to this court chronicles,[4] the FCC has consistently supported the MCI court's assignment of burdens in § 202(a) cases. See, e.g., Bowles v. United Tel. Co. of Mo., 12 F.C.C.R. 9840, at ¶ 20 & n.81 (1997); Panamsat Corp. v. Comsat Corp., 12 F.C.C.R. 6952, at ¶ 34 & n.90 (1997); Allnet Communication Servs., Inc. v. US West, Inc., 8 F.C.C.R. 3017, at ¶ 38 & n.87 (1993); In re Competition in the Interstate Interexchange Marketplace, 6 F.C.C.R. 5880, at ¶ 132 & n.216 (1991). We find the FCC's consistent practice to be persuasive. See Aguirre v. INS, 79 F.3d 315, 317 (2d Cir. 1996) (following an agency interpretation even though not required to do so by Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984)).
 
 
 33
 While the reasoning behind assigning such burdens is often obscure, see 2 John W. Strong, McCormick on Evidence § 337, at 415 (5th ed. 1999) ("there is no key principle governing the apportionment of the burdens of proof"); see als
 
 
 34
 o Wilkins v. Am. Ex. Isbrandtsen Lines, Inc., 446 F.2d 480, 484 & n.9 (2d Cir. 1971), here we believe three rationales support placing the burden on AT&T. First, all else being equal, the burden is better placed on the party with easier access to relevant information. See Ralph K. Winter, Jr., The Jury and the Risk of Nonpersuasion, 5 Law & Soc'y Rev. 335, 335 (1971); McCormick § 337, at 413; Charles A. Wright & Kenneth W. Graham, Jr., 21 Federal Practice and Procedure: Evidence § 5122, at 557 (1977 & Supp. 2000). AT&T unquestionably has better access to facts showing that the delay differential between resellers and commercial customers was reasonable. Moreover, in applying a similar burden shift to other sections of the Act, the FCC has considered information asymmetry. See, e.g., In re Implementation of the Non-Accounting Safeguards of Sections 271 and 272 of the Communications Act of 1934, 11 F.C.C.R. 21,905, at ¶ 348-49 (1996). Second, all else again being equal, courts should avoid req
 
 
 35
 uiring a party to shoulder the more difficult task of proving a negative. "The general rule is that the party that asserts the affirmative of an issue has the burden of proving the facts essential to its claim." Auburndale State Bank v. Dairy Farm Leasing Corp., 890 F.2d 888, 893 (7th Cir. 1989). Following this principle, it is preferable to require AT&T to prove the reasonableness of any discrimination in the provision of like services, rather than requiring NCA to prove unreasonableness.
 
 
 36
 Third, the policies underlying the statute at issue are appropriately considered by courts when allocating the burden of proof. See Federal Practice and Procedure § 5122, at 557. Here, the Congressional concern in enacting the CA generally, and § 202(a) specifically, was to eliminate the use of monopolistic power to stifle competition. See, e.g., S. Rep. No. 73-781, at 4 ("Section 202...make[s] unjust discrimination and undue preference unlawful"); see also MCI Communications Corp. v. AT&T Co., 462 F. Supp. 1072, 1079-80 (N.D. Ill. 1978) ("Congress concentrated on vesting the FCC with sufficient powers to insure that AT&T provided telephone users, both public and private, with nondiscriminatory and reasonable rates and with efficient, rapid and uniform service." (footnote omitted)). Accordingly, in view of the CA's disapproval of anti-competitive conduct, it is appropriate to shift the burden to AT&T to prove that it did not discriminate against NCA. Cf. Aspen Skiing Co. v. Aspen Highlands Skiing Corp., 472 U.S. 585, 608-09 (1985) (In the antitrust context, the burden of establishing a legitimate business justification for the conduct is placed on the defendant.).
 
 
 37
 Moreover, such burden allocation is particularly appropriate in situations like this one, where the common carrier has allegedly discriminated against a customer with which it is also in competition. See Cities of Bethany, Bushnell et al v. FERC, 727 F.2d 1131, 1140-41 (D.C. Cir. 1984); 18 C.F.R. § 2.17(e) (burden-shifting furthers the policy of the anti-discrimination provision of the Federal Power Act in price-squeeze situations, where a dominant utility supplier competes with a wholesale customer in a retail market). Taking all these factors into consideration, we find that the district court properly assigned to AT&T the burden of proving that the difference in provisioning like SDN services was justified.
 
 
 38
 AT&T raises several objections to such a rule. It argues that the FCC has not consistently shifted the burden of persuasion on the justification element. In Connecticut Office of Consumer Counsel v. AT&T Communications, 4 F.C.C.R. 8130 (1989), the FCC noted that
 
 
 39
 [i]n a complaint proceeding, the complainant has the burden of proof. This burden does not shift to the defendant once the complainant has proved that the services are like. . . . [I]t is the burden of proceeding which shifts to the defendant after the complainant has established a prima facie case and not the burden of proof.
 
 
 40
 Id. at ¶ 19. AT&T also relies on Connecticut Office and its progeny to further argue that is should not carry the burden of persuasion but rather the burden of production. See IT&E Overseas, Inc. v. Micronesian Telecomms. Corp., 13 F.C.C.R. 16,058, at ¶ 5 (1998); US Sprint Communications Co. v. Pacific Bell Tel. Co., 9 F.C.C.R. 7767, at ¶ 14 (1994); Clark-Bader, Inc. v. Pacific Bell, 8 F.C.C.R. 4202, at ¶ 8 (1993); ACC Long Distance Corp. v. Yankee Microwave, Inc., 10 F.C.C.R. 654, at ¶ 31 (1995); General Communications Inc. v. Alascom, 3 F.C.C.R. 700,705, at ¶ 33 (1988).
 
 
 41
 We reject these arguments. General Communications was decided before the decision in MCI, and the FCC has argued convincingly that it has subsequently adhered to MCI's burden-shifting scheme, see cases cited supra, a fact which AT&T concedes in response to the FCC's brief in this case.
 
 
 42
 AT&T also points to our decision affirming the FCC's Connecticut Office decision in Connecticut Office of Consumer Counsel v. Fed. Communications Comm'n ("Connecticut Office II"), 915 F.2d 75 (2d Cir. 1990). In that case, Connecticut customers argued that AT&T had unreasonably passed on to them a Connecticut gross receipts tax, thereby increasing their interstate telephone rates as compared to customers in other states. By quoting selectively from our decision affirming the denial of the Connecticut customers' § 202(a) claim, AT&T argues that we "reject[ed]...out of hand" the consumers' argument that "the Commission should have assigned AT&T the burden of proving that the [price differential] was either a 'business necessity' or the least discriminatory means of serving the desired end." See Connecticut Office II, 915 F.2d at 80. However, the argument that we characterized there as "border[ing] on the ridiculous" was not the burden-shifting argument at issue here; it was the quite different contention that the FCC should have used disparate impact analysis in its consideration of a § 202(a) discrimination claim. Id. To be sure, disparate impact analysis under Title VII does include shifting a burden (of production) to the defendant to justify discrimination. See EEOC v. Joint Apprenticeship Comm., 186 F.3d 110, 120-21 (2d Cir. 1999). But the proposition we rejected in Connecticut Office II was the broader one that disparate impact analysis, which is designed to ferret out facially neutral employment practices that in fact discriminate invidiously, should be imported wholesale into "this very different area." Id.
 
 
 43
 Finally, we reject AT&T's argument that the availability of more powerful discovery procedures in district court requires NCA to bear the burden of proof on all three elements of its § 202 claim even if it is appropriate to shift the burden of proof in an FCC proceeding.[5] As discussed above, assigning the burden of proof may ameliorate an information asymmetry, and discovery procedures are likewise designed to provide a party access to information possessed by its adversary. Access to discovery may therefore be an appropriate consideration when assigning burdens of proof. However, we do not think that the availability of greater discovery in district court, as compared to the FCC, demands a different outcome in this case. First, it is not clear to us that the FCC's discovery procedures are as anemic as AT&T claims. See 47 C.F.R. § 1.729 (providing for discovery in FCC complaint proceedings against common carriers); IT&E Overseas, 13 F.C.C.R. 16,058, at ¶ 16 ("The Commission's rules provide for discovery where the most probative evidence of an alleged violation is solely within the possession of a defendant carrier."). Second, as we have noted above, information asymmetry, while a factor, is rarely a controlling factor when assigning burdens. Our conclusion is supported by the historical observation that expanded discovery has not generally led to reallocation of burdens:
 
 
 44
 Expanded pretrial discovery would seem to have diminished greatly whatever importance [information asymmetry] had in allocating the burdens. However, there has been no rush by the courts to reassess allocations between the parties in light of expanded discovery, perhaps attesting to the fact that exclusive knowledge in one party has seldom been the controlling reason for assigning the burdens of proof.
 
 
 45
 McCormick § 337, at 413 n.11.
 
 
 46
 We have considered AT&T's remaining arguments and find them to be without merit.
 
 CONCLUSION
 
 47
 For the foregoing reasons, the judgment of the district court is affirmed.
 
 
 
 Notes:
 
 
 [1]
 Section 201(b) provides, in pertinent part: "All charges, practices, classifications, and regulations for and in connection with such communication service, shall be just and reasonable, and any such charge, practice, classification, or regulation that is unjust or unreasonable is declared to be unlawful." 47 U.S.C. § 201(b). The Resale Rules, as described by the district court, "are similar to the terms of section 201(b), but more narrowly focused on unreasonable charges or practices vis a vis resellers. Briefly stated . . . the Resale Rules prevent AT&T from placing unreasonable restrictions on resale in violation of the FCC's pro competitive policies enunciated in the FCC's resale orders." NCA I, 1998 WL 118174, at *22 (internal quotation marks and alterations omitted). The jury rejected NCA's claims that AT&T unreasonably refused to provide NCA with certain telecommunications services, in violation of § 201(b) and the Resale Rules. See NCA II, 1998 WL 851588, at *1.
 
 
 [2]
 AT&T also argues that the FCC has determined conclusively that AT&T's use of separate departments to process orders from commercial customers and resellers is "just" and "reasonable." But the cases it cites support only the more limited proposition that it is not per se unreasonable for a common carrier to so segregate its provisioning operations. See People's Network, Inc. v. AT&T Co., 12 F.C.C.R. 21,081, at ¶ 29 (1997). We therefore reject this argument without further discussion.
 
 
 [3]
 AT&T argues on appeal that NCA's evidence of the 30 to 40 day period is inapplicable because the term "provisioning" refers only to one step of the overall process by which AT&T serviced SDN orders. Because the evidence reflects a diversity of terms in addition to "provisioning," such as "installations," "processing," and "cycle time," the jury was free to reject AT&T's characterization of the evidence.
 
 
 [4]
 After oral argument on February 7, 2000, the panel requested an amicus curiae brief from the FCC on the question of whether the burden of proof on the third element of a § 202(a) claim should be shifted to the common carrier to which NCA and AT&T filed responses.
 
 
 [5]
 The Act creates concurrent jurisdiction over § 202 claims. A party may bring its § 202 complaint either to the FCC or in district court. See 47 U.S.C. § 207. The parties agree that while damages are available in either forum, attorney's fees may only be recovered in district court. See 47 U.S.C. § 206.