INTERNATIONAL MINERALS & RE-
SOURCES, S.A., and International
Shipping Company, Plaintiffs–Appel-
lees,

Lygren Maritime Services, Plaintiff,

v.

BOMAR RESOURCES, INC., American
General Resources, Inc., Richard Jar-
oss, and T. Peter Pappas, Defendants–
Appellants,

A.L. Burbank Shipbrokers,
Ltd., Defendant.

Nos. 00–7117, 00–7183, 00–7217.

United States Court of Appeals,
Second Circuit.

Feb. 26, 2001.

John E. Grimer, Kirlin, Campbell & Keating, New York, NY, for T. Peter Pappas; Howard Blum, Rivelis, Pawa & Blum, LLP, New York, NY, for American General Resources, Inc. and Richard Jaross, for appellants.

Elliot Silverman, McDermott, Will & Emery, New York, NY, for appellees.

Present FEINBERG, SOTOMAYOR and KATZMANN, Circuit Judges.

## SUMMARY ORDER

UPON DUE CONSIDERATION of this appeal from a judgment and order of the United States District Court for the Southern District of New York (Harold Baer, Jr., *Judge*), it is hereby

ORDERED, ADJUDGED AND DE-CREED that the judgment and order of the district court are AFFIRMED.

Defendants–Appellants T. Peter Pappas, American General Resources, Inc. ("AGR"), and Richard Jaross (collectively, "defendants-appellants")[1] appeal from an October 18, 1999 judgment of the United States District Court for the Southern District of New York (Harold Baer, Jr., *J.*) entered following a jury verdict awarding $19.5 million in compensatory damages and $37.5 million in punitive damages for tortious interference with the contract of plaintiffs-appellees International Minerals and Resources, S.A. and International Shipping Company to purchase the ship "Brazilian Friendship." The compensatory damages awarded represented $17.5 million in lost profits on resale of the ship and $2 million in lost chartering profits. The district court denied defendants-appellants' subsequent motions for judgment as a matter of law under Fed R.Civ.P. 50(b) and for a new trial under Fed.R.Civ.P. 59 with respect to all issues on appeal except *for punitive damages.* By a *memorandum* and order dated January 26, 2000, the district court ordered that the amount of the punitive damages award be reduced from $37.5 million to $1.5 million by a remittitur that was accepted by plaintiffs-appellees. (A 1681–87) This appeal followed.

■ This Court "review[s] de novo the denial of a motion under Rule 50(b) and review[s] the denial of a Rule 59 motion for abuse of discretion." *National Comm. Ass'n v. AT & T Corp.*, 238 F.3d 124, 2001 WL 28593, *2 (2d Cir.2001).[2] We affirm the district court in all respects.

■ Judgment as a matter of law "may not properly be granted under Rule 50 unless the evidence, viewed in the light most favorable to the opposing party, is insufficient to permit a reasonable juror to find in her favor." *DiSanto v. McGraw–Hill, Inc.*, 220 F.3d 61, 64 (2d Cir.2000) (per curiam). Here, the evidence presented at trial was legally sufficient for a reasonable jury to find Pappas liable for tortious interference, to award compensatory damages of the type and amount it did, and to decide that punitive damages were warranted—albeit in the reduced amount subsequently ordered by the district court. We note that the liability of defendant-appellants AGR and Jaross is not at issue here because such liability was established in an earlier trial by a jury verdict from which AGR and Jaross did not appeal. *See International Minerals and Resources, S.A. v. Pappas*, 96 F.3d 586, 592 n. 2 (2d Cir.1996) ("*International Minerals I*").[3]

■ In order to "maintain a successful cause of action for tortious interference with contract under New York law, a plaintiff must allege and prove the existence of a valid contract and damages caused by the defendant's knowing and

1. Bomar Resources, Inc. ("Bomar"), pursuant to a stipulation submitted to this Court at oral argument, has withdrawn its appeal.

2. "Remittitur orders, granting a new trial unless the plaintiff consents to reduce the award to a specified figure, present a hybrid that combines grant and denial of a new trial." Charles A. Wright, Arthur R. Miller and Edward H. Cooper, Federal Practice & Procedure 2d, § 3915.5 (1992).

3. Although the same proceeding concluded with a finding that Pappas was not liable for

tortious interference, this Court in *International Minerals I* agreed with plaintiffs that errors in that proceeding required a retrial on the issue of Pappas' liability. *Id.* at 598. The subsequent jury verdict imposing such liability is the subject of the current appeal. In addition, in *International Minerals I*, this Court vacated the jury's award of $1.2 million in compensatory damages as against all defendants and ordered a retrial on the issue of damages, *see id.*, which resulted in the compensatory and punitive damage awards challenged on this appeal.

intentional interference with that contract without reasonable justification." *International Minerals I*, 96 F.3d at 595 (internal quotation marks omitted); *see also Kronos, Inc. v. AVX Corp.*, 81 N.Y.2d 90, 94, 595 N.Y.S.2d 931, 934, 612 N.E.2d 289, 292 (1993) (describing tortious interference as consisting of four elements: "(1) the existence of a contract between plaintiff and a third party; (2) defendant's knowledge of the contract; (3) defendant's intentional inducement of the third party to breach or otherwise render performance impossible; and (4) damages to plaintiff"). The causation required is that "but for" the activities of the defendant, there would have been no breach of the contract. *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir.1990).

■ Here, based on the evidence presented at trial, the jury could reasonably have found that: (a) the cancellation by the ship's seller of its contract to sell the ship to plaintiffs-appellees was an anticipatory repudiation of that contract that was not accepted by plaintiffs-appellees, meaning that the contract continued in existence until after Pappas became involved in the transaction on May 29, 1987; (b) Pappas had knowledge of the continued existence of the contract—*i.e.*, that plaintiffs-appellees had not accepted the repudiation—because, among other things, he received notice on June 1, 1987 of an English court injunction obtained by plaintiffs-appellees to enjoin the sale; (c) Pappas induced the seller to act in a way that made it impossible for the seller to perform its contract with plaintiffs-appellees, namely selling the ship to Pappas; and (d) but for these actions, plaintiffs-appellees would not have been damaged. This is sufficient to uphold the jury's verdict that Pappas is liable for tortious interference with contract and is also sufficient to render the denial of a new trial on the issue well within the discretion of the district court.[4]

■ Defendants-appellants also claim that the compensatory damages award should be set aside because, as a matter of law, no "reasonably certain" basis for such damages was presented at trial. *See Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 332 (2d Cir. 1993) (under New York law, existence of damages must be capable of proof to the level of "reasonable certainty" before damages issue is even submitted to jury). Alternatively, defendants-appellants claim that the award was against the weight of the evidence and excessive. We find that the evidence presented by plaintiffs-appellees' experts at trial on the issue of damages provided a reasonably certain basis for the jury to make a determination as to the amount of such damages. In addition, there was sufficient evidence presented by such experts to render the amount imposed not against the weight of the evidence and excessive, and to permit us to uphold the denial of a motion for a new trial.

4. Defendants-appellants contend that the district court should have determined, as a matter of law, that plaintiffs-appellees would have been unable to complete their purchase of the Brazilian Friendship because they supposedly would have failed to satisfy a condition of their bank financing that there be no claims or litigation affecting the ship. Even assuming the issue has not been waived, it lacks merit in any event because the only evidence of such potential litigation was a suit threatened by Jaross, one of the defendants-appellants. Pappas cannot rely on a threat of suit that constituted part of defendants-appellants' tortious interference with plaintiffs-appellees' contract in order to defeat the jury's finding of liability. Moreover, even if a valid threatened claim had existed, we could not say as a matter of law that plaintiffs would have been unable to negotiate a new provision in the financing agreement to deal with the issue.

As for punitive damages, in the context of an action under New York law for tortious interference with contract, "an injured party can recover punitive damages when the tortious act complained of involved a wanton or reckless disregard of the plaintiff's rights." *Universal City Studios, Inc. v. Nintendo Co.*, 797 F.2d 70, 77 (2d Cir.1986). Here, the jury could reasonably have determined from the evidence presented at trial that Pappas and Jaross had the requisite state of mind through their participation in a fraudulent scheme to convince U.S. and British courts that Pappas' purchase of the ship was completed before the issuance of the British injunction—a scheme that included backdating documents and paying off a witness before his deposition. As for AGR, Jaross' position as AGR's president renders AGR liable for punitive damages based on Jaross' acts. *See Loughry v. Lincoln First Bank, N.A.*, 67 N.Y.2d 369, 378, 502 N.Y.S.2d 965, 970, 494 N.E.2d 70, 75 (1986) ("complicity rule" results "in employer liability for punitive damages ... when a superior officer in the course of employment orders, participates in, or ratifies outrageous conduct.")[5] Nor did the district court abuse its discretion in denying a retrial on that issue or in ordering the remittitur; the reduced amount was not excessive and provided an appropriate penalty for the conduct at issue.

Two additional issues warrant a brief mention. Although defendants-appellants claim on appeal that the district court erred in excluding evidence related to plaintiffs-appellees' recovery in a separate action of certain damages related to a shipping contract with Hancock Mining, Ltd.—because such recovery creates a possibility that some portion of the $2 million award of chartering profits here would constitute a double recovery—we find that there is no evidence in the record that defendants-appellants made a proffer to the district judge sufficient to preserve the issue for review on appeal. *See Fortunato v. Ford Motor Co.*, 464 F.2d 962, 967 (2d Cir.1972) (proffer required "where the significance of the excluded evidence is not obvious"); *see also Armour and Co. v. Nard*, 463 F.2d 8, 12 (8th Cir.1972) ("The offer of proof must be specific, [and] counsel must show what he expects to prove by the testimony of the witness."). Nor does the judge's decision to exclude such evidence rise to the level of plain error.

Lastly, defendants-appellants' briefs to this Court raised an issue regarding whether New York law required the alteration of the final judgment imposing liability on the parties because of plaintiffs-appellees' post-judgment settlement with A.L. Burbank Shipbrokers, Ltd., for an undisclosed amount. However, that issue is no longer before us as defendants-appellants withdrew their appeal of that issue by letter brief dated January 8, 2001.

We have considered the remaining arguments of defendants-appellants and find them to be without merit. Accordingly, the judgment and order of the district court are AFFIRMED.

---

5. We note that this Court's statement in *International Minerals I*, 96 F.3d at 598, that "the determination of whether or not punitive ... damages are appropriate will have to be made on the basis of the facts presented on retrial ... [but o]n the record before us, we note that it does not appear that damages of either type would be appropriate," is dicta that, of course, relies solely on the record of the earlier proceeding.