**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-1114
_____

PATRICIA EVANKAVITCH,

v.

GREEN TREE SERVICING, LLC,

                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-12-cv-02564)
District Judge:  Honorable James M. Munley
_____

Argued: December 9, 2014

Before:  FUENTES, FISHER, and KRAUSE, *Circuit Judges*

(Filed: July 13, 2015)
_____

Carlo Sabatini, Esq.
216 North Blakely Street
Dunmore, PA 18512

Deepak Gupta, Esq. [Argued]
Gupta Wessler
1735 20th Street, NW
Washington, DC 20009

　　　*Counsel for Appellee*


Barbara K. Hager, Esq.
Henry F. Reichner, Esq.
Reed Smith
1717 Arch Street
Three Logan Square, Suite 3100
Philadelphia, PA 19103

David J. Bird, Esq. [Argued]
Reed Smith
225 Fifth Avenue
Suite 1200
Pittsburgh, PA 15222

　　　*Counsel for Appellant*

―――――――

## OPINION OF THE COURT

―――――――

KRAUSE, *Circuit Judge.*

　　Under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, a debt collector is

liable to a consumer for contacting third parties in pursuit of that consumer's debt unless the communication falls under a statutory exception. One of those exceptions covers communication with a third party "for the purpose of acquiring location information about the consumer" but, even then, prohibits more than one such contact "unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." 15 U.S.C. § 1692b. In this appeal following a jury verdict and judgment entered against a debt collector for repeated contact with third parties, we consider a matter of first impression among the Courts of Appeals: whether the burden in such a case is on the debt collector to prove or the consumer to disprove that the challenged third-party communications fit within § 1692b's exception for acquisition of location information. We conclude that the debt collector bears that burden and will therefore affirm.

## I. Facts and Procedural History

In 2005, Patricia Evankavitch executed a $43,300.00 mortgage against her property so that she could, in turn, lend money to her son, Christopher.[1] In order for Evankavitch to repay the loan, Christopher regularly deposited checks into her bank account, and she then paid the mortgage company. Eventually, however, Christopher had financial difficulties and stopped depositing his checks. As a result, Evankavitch fell behind on her loan payments. In May 2011, with

---

[1] For ease of reference, we refer to Evankavitch's children by their first names throughout this opinion.

3

Evankavitch four months behind, the mortgagee's rights were assigned to Green Tree Servicing, LLC ("Green Tree").[2]

Green Tree and Evankavitch had periodic conversations about the loan over the next several months. Evankavitch initiated one of those discussions by calling Green Tree from a cell phone belonging to her daughter, Cheryl, which apparently led Green Tree to record Cheryl's number as an additional number where it could reach Evankavitch. Thus, towards the end of 2011, Green Tree made numerous unsuccessful calls to Evankavitch at both Evankavitch's and Cheryl's numbers.

In January 2012, Green Tree reached Cheryl on her cell phone. Cheryl said that she would ask her mother to call Green Tree. A month later, Evankavitch called Green Tree again from Cheryl's cell phone. This time, she informed Green Tree that the number was her daughter's and instructed Green Tree to stop using it. Instead, over the next several months, representatives from Green Tree continued to call both Evankavitch's and Cheryl's numbers and left several messages on Cheryl's voicemail requesting that Evankavitch call Green Tree.

---

[2] Ordinarily, creditors are not considered debt collectors under the FDCPA. *See Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 403 (3d Cir. 2000). However, an assignee of a loan "may be deemed a 'debt collector' if the obligation is already in default when it is assigned." *Id.* Green Tree assumed the assignment under those circumstances and thus constitutes a debt collector for FDCPA purposes in this case.

4

In August 2012, after failing to reach Evankavitch, Green Tree began calling Evankavitch's neighbors, Robert and Sally Heim. After a Green Tree employee asked Mr. Heim to have Evankavitch call Green Tree, Mr. Heim passed Green Tree's contact information on to Evankavitch.[3] After two more months without hearing from Evankavitch, Green Tree made at least three more calls to the Heims, leaving two messages and speaking with Mr. Heim once more. Mr. Heim told Green Tree in that final call that Christopher had moved to California and that Green Tree should stop calling the Heims. After learning of these communications, Evankavitch brought suit, claiming, among other things, that Green Tree impermissibly contacted Mr. Heim in its debt collection efforts, in violation of § 1692b-c of the FDCPA.

## A. The District Court's Challenged Rulings

With limited exceptions, the FDCPA forbids a debt collector from contacting third parties in its attempts to collect a consumer's debt, 15 U.S.C. § 1692c(b), and makes the debt collector liable in an individual action for statutory damages up to $1,000, over and above any actual damages, *id.* at § 1692k(a). In both an *in limine* ruling and in its jury charge, the District Court took the position that when a debt collector alleges that it made a contact that falls within the

---

[3] Although Green Tree suggests otherwise in its briefing, it cites little in the record that indicates that it actually attempted to discern the location of Evankavitch during this call or any subsequent call. Instead, these calls to the Heims appear to have been made with the same purpose as the calls made to Cheryl, i.e., for these third parties to function as Green Tree's message service in soliciting a return call from Evankavitch.

exception for acquisition of location information, the debt collector has the burden to prove the exception as an affirmative defense. Specifically, the District Court advised the jury that Evankavitch and Green Tree "agree that the Fair Debt Collection Practices Act is violated in the sense that they agree that the Defendant contacted third parties and did so multiple times, . . . which is generally a violation of the Act." App. 404-405. It went on to state that the "burden is on the Defendant to determine and establish that it sought location information." App. 405. Thus, the District Court instructed:

> [T]he issues for you to decide are[:] one, whether the Defendant has established that it contacted the third parties to obtain location information; and two, whether the Defendant contacted the third party multiple times because the Defendant reasonably believed that the earlier response of the third party is incorrect or incomplete, and that the third party now has the correct or the complete location information.

App. 408.

The jury returned a verdict in favor of Evankavitch. The District Court entered judgment in her favor for $1,000, and this appeal ensued. Green Tree argues on appeal that both the *in limine* ruling and the jury instructions were improper, such that the verdict should be vacated and this matter re-tried with the burden of proof on Evankavitch to disprove that any exception applied.

6

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331.  We have jurisdiction pursuant to 28 U.S.C. § 1291.

When reviewing a jury charge, "we exercise plenary review to determine whether the instruction misstated the applicable law."  *Franklin Prescriptions, Inc. v. N.Y. Times Co.*, 424 F.3d 336, 338 (3d Cir. 2005).[4]  We also exercise plenary review over legal rulings made pursuant to an *in limine* order.  *United States v. Romano*, 849 F.2d 812, 814 (3d Cir. 1988).

---

[4] Evankavitch argues that Green Tree failed to preserve its objection to the charge so that we should reverse only if the error is "fundamental and highly prejudicial or if the instructions are such that the jury is without adequate guidance on a fundamental question and our failure to consider the error would result in a miscarriage of justice." *Fashauer v. N.J. Transit Rail Operations*, 57 F.3d 1269, 1289 (3d Cir. 1995) (internal quotation marks omitted).  We disagree.  After a careful review of the record, we conclude that Green Tree's trial counsel adequately raised its objections and that the District Court made a definitive and "explicit rejection of [Green Tree's] proposed instructions." *Collins v. Alco Parking Corp.*, 448 F.3d 652, 656 (3d Cir. 2006).

## III. Discussion

### A. The FDCPA and Its General Prohibitions on Third-Party Contacts

The FDCPA was enacted in 1977 in response to "the abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors." *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 996 (3d Cir. 2011) (internal quotation marks omitted). The purpose of the Act is both to "eliminate abusive debt collection practices" and to "'insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged.'" *Id.* (quoting 15 U.S.C. § 1692(e)). As remedial legislation, the Act is construed broadly to effectuate those purposes. *Caprio v. Healthcare Revenue Recovery Grp., LLC*, 709 F.3d 142, 148 (3d Cir. 2013).

"[T]he invasion of privacy," we recently explained, is "a core concern animating the FDCPA." *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014); *accord* 15 U.S.C. 1692(a) (stating that unfair debt collection practices lead to, among other things, "invasions of individual privacy"). One way Congress addressed this concern was to "prohibit[] a debt collector from communicating with third parties about the consumer's debt." *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009) (citing § 1692c(b)). Legislative history indicates this prohibition was considered an "extremely important protection." S. Rep. 95-382, at 4 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, 1699.

In recognition of a "debt collector's legitimate need to seek the whereabouts of missing debtors," *id.* at 4, however, the Act provides an exception to this general prohibition for communications made "for the purpose of acquiring location information about the consumer." 15 U.S.C. § 1692b.[5] In other words, a debt collector may contact third parties to ascertain where it may locate the consumer. That exception is itself limited, however, as debt collectors may "not communicate with any such person more than once . . . unless the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information." *Id.* at § 1692b(3).

None of our sister Circuits has yet addressed the question whether the consumer has the burden of disproving this exception as part of its case-in-chief, or whether the debt collector carries the burden of proving the exception as an affirmative defense, and the district courts have taken divergent approaches.[6] It is to this question we now turn.

---

[5] Other exceptions to the general prohibition on third-party communications include prior consent by a consumer, the express permission of a court of competent jurisdiction, and communications reasonably necessary for a debt collector to effectuate a post-judgment judicial remedy. 15 U.S.C. § 1692c(b).

[6] *Compare, e.g., Williams v. Web Equity Holdings, LLC*, No. 13-13723, 2014 WL 3845952, at *4 (E.D. Mich. Aug. 5, 2014) ("The language of § 1692b(3) creates an exception for debt collectors seeking to locate the debtor to contact persons they reasonably believe have such location

9

## B. Determining Burdens of Proof

We generally start our analysis with the plain text of a statute. But where, as here, that text "is silent on the allocation of the burden of persuasion," we "begin with the ordinary default rule that plaintiffs bear the risk of failing to prove their claims." *Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56 (2005). This long-standing, common-sense rule stems from the understanding that "[t]he burdens of pleading and proof with regard to most facts have been and should be assigned to the plaintiff who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." 2 McCormick On Evid. § 337 (7th ed. 2013).

---

information. This, in turn, imposes a pleading burden on plaintiffs alleging a violation of this section to provide facts to support an inference that the debt collector had no reason to believe that the person knew the whereabouts of the debtor or that they provided an incomplete or erroneous response."), *with Kempa v. Cadlerock Joint Ventures, L.P.*, No. 10-11696, 2011 WL 761500, at *4 (E.D. Mich. Feb. 25, 2011) ("CadleRock has not provided any evidence to show that, in any of her messages or communications to Kempa's parents, Hunt stated that she was confirming or correcting Kempa's location information. . . . Since the FDCPA is a strict liability act, Kempa is entitled to summary judgment with regards to Kempa's 15 U.S.C. § 1692c(b) claim."), *and Kasalo v. Monco Law Offices, S.C.*, No. 09-2567, 2009 WL 4639720, at *6 (N.D. Ill. Dec. 7, 2009) ("[W]e treat the exception in Section 1692b(3) on which defendant relies as an affirmative defense, which defendant has the burden of proving.").

Green Tree essentially asks that we end our inquiry at this point and treat the default rule as an absolute one. We decline, for "when both a statute and its legislative history are silent on the question" of the burden of proof, "[i]t is common ground that no single principle or rule solves all cases by setting forth a general test." *Schaffer*, 546 U.S. at 62 (2005) (Stevens, J., concurring) (citing *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 494 n.17).[7]

Beyond the ordinary default rule that a plaintiff bears the burden of proving her claims, we glean from decisions of the Supreme Court, this Court, and other Courts of Appeals a

---

[7] The FDCPA's legislative history, while not completely silent on the subject, offers little insight into Congress's intent. At the beginning of the legislative process, the House of Representatives placed the burden of proof on the debt collector after a minimal showing by the consumer. The House proposed a burden-shifting framework under which, if a consumer alleged that a debt collector inappropriately contacted a third party and pleaded that he or she did not consent to any third-party contacts, the burden of proof would shift to the debt collector. H. Rep. 95-131, 19 (1977). Among other changes, and without a readily apparent explanation, the Senate did not include that subsection in its version of the Act, S. Rep. 95-382 (1977), *reprinted in* 1977 U.S.C.C.A.N. 1695, which the House adopted in its entirety by floor amendment, avoiding a conference committee, 123 Cong. Rec. 28109 (Sept. 8, 1977). Given this ambiguity, and lacking "that veritable Rosetta Stone of legislative archaeology, a crystal clear Committee Report," *United States v. R.L.C.*, 503 U.S. 291, 309 (1992) (Scalia, J., concurring in part), we do not accord weight to this legislative history.

11

number of factors relevant to our analysis here, including: (1) whether the defense is framed as an exception to a statute's general prohibition or an element of a prima facie case; (2) whether the statute's general structure and scheme indicate where the burden should fall; (3) whether a plaintiff will be unfairly surprised by the assertion of a defense; (4) whether a party is in particular control of information necessary to prove or disprove the defense; and (5) other policy or fairness considerations.  We address each factor below.

### 1. Statutory Exceptions

The Supreme Court has instructed that while the default rule applies to "most" disputes about burdens, *Schaffer*, 546 U.S. at 57, another "general rule of statutory construction" provides "that the burden of proving justification or exemption under a special exception to the prohibitions of a statute generally rests on one who claims its benefits," *FTC v. Morton Salt Co.*, 334 U.S. 37, 44-45 (1948); *see also Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) (repeating "the familiar principle that '[w]hen a proviso . . . carves an exception out of the body of a statute or contract those who set up such exception must prove it'") (quoting *Javierre v. Cent. Altagracia*, 217 U.S. 502, 508 (1910)); *United States v. Taylor*, 686 F.3d 182, 190 & n.5 (3d Cir. 2012) (compiling "numerous Supreme Court decisions" for the proposition that "where the statute contains . . . an exception, the defendant bears the burden of proving it"). This "longstanding convention is part of the backdrop against which the Congress writes laws, and we respect it unless we have compelling reasons to think that Congress meant to put the burden of persuasion on the other side." *Meacham*, 554 U.S. at 91-92.

12

Here, § 1692c(b) states that "[e]xcept as provided in section 1692b . . . a debt collector may not communicate, in connection with the collection of any debt, . . . [with third parties]." 15 U.S.C. § 1692c(b). Thus, the FDCPA generally prohibits a debt collector from contacting third parties, with the debt collector's ability to seek location information framed as an exception to this general prohibition. Repeat contacts made pursuant to that exception are even further limited, with telltale language likewise indicative of an affirmative defense:

> Any debt collector communicating with any person other than the consumer for the purpose of acquiring location information about the consumer shall . . . not communicate with any such person more than once *unless* requested to do so by such person or *unless* the debt collector reasonably believes that the earlier response of such person is erroneous or incomplete and that such person now has correct or complete location information[.]

15 U.S.C. § 1692b(3) (emphasis added); *see United States v. Franchi-Forlando*, 838 F.2d 585, 591 (1st Cir. 1988) (Breyer, J.) (stating that introducing provisions with the words "unless" and "except" may indicate an affirmative defense).

Moreover, in assessing which party has the burden of proof under this rule, courts often "focus[] on the relationship between the defense in question and the plaintiff's primary case," and "on whether a defense raises factual or legal issues other than those put in play by the plaintiff's cause of action." *In re Sterten*, 546 F.3d 278, 284 (3d Cir. 2008). Put differently, as we recently held in the criminal context,

13

"[w]hether a particular statutory phrase constitutes a defense or an element of the offense . . . turns on whether the statutory definition is such that the crime may not be properly described without reference to the exception." *Taylor*, 686 F.3d at 191 (internal quotation marks omitted). If that is the case, "the exception is an element of the crime"; if not, the exception is an affirmative defense. *Id.*

In the case of the FDCPA, no reference to the Act's exceptions is necessary to discern that calls to third parties in pursuit of collecting a consumer's debt are prohibited. Instead, what constitutes a violation is apparent from the plain language of § 1692c(b). Thus, we find no compelling reason to reverse the "longstanding convention" that a party seeking shelter in an exception—here, the debt collector—has the burden to prove it. *Meacham*, 554 U.S. at 91.

## 2. The Statutory Scheme

The structure of the statute, another useful indicator of Congressional intent, also leads us to place the burden of proof on the debt collector. *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 371 (1988) ("A provision that may seem ambiguous in isolation is often clarified by the remainder of the statutory scheme."); *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 59-60 (1987) (analyzing statutory language in a way that is in accord with the "language and structure" of the section of law at issue).

We find persuasive in this regard that the language and interaction of the general prohibition in § 1692c(b) and its exception for location information in § 1692b closely track the language and interaction of § 1692k, which imposes civil

14

liability for FDCPA violations, and its two exceptions, which are widely recognized as affirmative defenses. *See Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 578 (2010) (citing 15 U.S.C §§ 1692k(c) and (e) for the proposition that "[t]he Act contains two exceptions to provisions imposing liability on debt collectors"). The first of these is the so-called good faith error defense, which explicitly places the burden on the debt collector to prove that it acted unintentionally and had procedures in place to avoid such an error. 15 U.S.C. § 1692k(c).[8] The second provides a safe harbor for a debt collector that seeks and receives legal opinions from the Consumer Financial Protection Bureau before they proceed. 15 U.S.C. § 1692k(e).[9] Although this second exception lacks the explicit burden-shifting language of the first, both are delineated as affirmative defenses by § 1692k(a)'s general statement that a debt collector shall be held liable "[e]xcept as otherwise provided by this section," with the particular affirmative defenses described in separate subsections. 15 U.S.C. §§ 1692k(a), (c), (e).

---

[8] 15 U.S.C. § 1692k(c) states: "A debt collector may not be held liable . . . if [it] shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."

[9] 15 U.S.C. § 1692k(e) states: "No provision of this section imposing any liability shall apply to any act done or omitted in good faith in conformity with any advisory opinion of the [Consumer Financial Protection Bureau] . . . ."

The location-information exception at issue in this case qualifies § 1692c(b)'s general prohibition against third-party contacts in almost identical terms, providing that third-party contacts are forbidden "[e]xcept as provided in section 1692b," and setting off the description of the exception in that separate section. Such placement of the exception and the general prohibition in different parts of the statute has been recognized by the Supreme Court as indicative of an affirmative defense. *See Meacham*, 554 U.S. at 87, 91 (concluding that an exception for employer conduct otherwise prohibited by the Age Discrimination in Employment Act constituted an affirmative defense based in part on "how the statute reads, with exemptions laid out apart from the prohibitions"). Thus, the statutory structure and the parallels between the language of § 1692c(b), with its exception for location-information in § 1692b, and § 1692k(a), with its well-established affirmative defenses in §§ 1692k(c) and 1692k(e), strongly indicate that § 1692b also was intended to be an affirmative defense. *See Kirtsaeng v. John Wiley & Sons, Inc.*, 133 S. Ct. 1351, 1362 (2013) ("[W]e normally presume that . . . words . . . carry the same meaning when they appear in different but related sections."); *Gwaltney*, 484 U.S. at 59-60 (interpreting statute in accord with its general language and structure).

Green Tree attempts to differentiate § 1692k on the ground that its exceptions require a showing of subjective intent or good faith and thus are appropriately deemed affirmative defenses because the proof is in the possession of the debt collector. In contrast, Green Tree argues, one of § 1692b's subsections, the provision that allows for follow-up calls to obtain location information if the debt collector "reasonably believes" the third party did not originally

16

provide and now has complete or accurate information, imports an objective test into § 1692b, such that the exception can and should be disproven by the plaintiff.[10] Green Tree's argument proves too much, however, for the *sine qua non* of any communication that qualifies under § 1692b, whether initial or follow up, is that the communication was "for the purpose of" acquiring location information—a question of subjective intent that is appropriate, even by Green Tree's logic, for treatment as an affirmative defense.

### 3. Avoiding Surprise and Undue Prejudice

Another factor for our consideration in categorizing an exception as an affirmative defense is the need to avoid unfair surprise and undue prejudice. *See Sterten*, 546 F.3d at 285; *see also Ingraham v. United States*, 808 F.2d 1075, 1079 (5th Cir. 1987). In examining this concern, we consider, given what a plaintiff is "already required to show" to prove its case, whether a defendant's failure to raise the specific issue

---

[10] In support, Green Tree cites to the Fourth Circuit's unpublished, per curiam opinion in *Worsham v. Accounts Receivable Management., Inc.*, 497 F. App'x 274, 277 (4th Cir. 2012). *Worsham*, however, did not address the burden of proof under § 1692b but only the standard for reasonableness under § 1692b(3), concluding "[t]he use of the word 'reasonably' indicates that this is an objective standard that the debt collector must meet to avoid liability under the FDCPA." *Id.* Moreover, albeit in dictum, the court's reference to the objective standard as one "the debt collector must meet," would appear, if anything, to undermine Green Tree's position.

would otherwise "deprive[] [a plaintiff] of an opportunity to rebut that defense or to alter her litigation strategy accordingly." *Sterten*, 546 F.3d at 285.

In *Sterten*, a consumer brought a case pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601, *et seq.*, alleging that a creditor failed to accurately disclose finance charges in connection with a home mortgage. 546 F.3d at 281. We found no unfair surprise when a defendant, referencing a general denial in its answer to the complaint, later sought shelter in TILA's "tolerances provision," a section of the statute that specifies the extent to which a lender may miscalculate a finance charge before incurring liability.[11] *See id.* at 285-87 (examining 15 U.S.C. § 1605(f)). In concluding there was no undue prejudice to the plaintiff-consumer as a consequence of the defendant's failure to raise the tolerances provision as an affirmative defense, we reasoned that the very same analysis that a consumer would undertake to prove that a disclosure was inaccurate would also reveal whether the inaccuracy fell within the tolerances provision. *Id.* at 285. In other words, proving the claim would necessarily disprove the defense, and the consumer therefore would neither have sought different discovery nor altered her trial strategy had the defendant affirmatively pleaded the defense, rather than a general denial. *Id.*

---

[11] In *Sterten*, we addressed the burden of pleading rather than the burden of proof at trial, a distinction without a difference for purposes of today's analysis. *See Taylor v. Sturgell*, 553 U.S. 880, 907 (2008) (stating that when a party seeks shelter in an affirmative defense it is "[o]rdinarily . . . incumbent on the defendant to plead and prove such a defense").

18

The exception we consider here stands in stark contrast. If a debt collector acknowledges that it made a generally prohibited call, but contends it did so based on a purpose or reasonable belief that would exempt it from liability, a diligent consumer will need to explore the debt collector's knowledge and intent. Thus, a consumer faced with the assertion that a call was made pursuant to the FDCPA's location-information exception *would* reasonably change her discovery and trial strategy to prove that the debt collector was not seeking location information, or, in a follow-up call, did not have a reasonable belief that the earlier information was incorrect and likely to be corrected. Accordingly, considerations of unfair surprise and undue prejudice also counsel in favor of finding that § 1692b is an affirmative defense.

### 4. The Party with Peculiar Knowledge of the Relevant Facts

Another general rule of statutory construction, "that where the facts with regard to an issue lie peculiarly in the knowledge of a party, that party has the burden of proving the issue," also indicates the burden rests with the debt collector. *Dixon v. United States*, 548 U.S. 1, 9 (2006) (internal quotation marks omitted); *accord Nat'l Commc'ns Ass'n Inc. v. AT&T Corp.*, 238 F.3d 124, 130 (2d Cir. 2001) (noting that "all else being equal, the burden is better placed on the party with easier access to relevant information"). This "ordinary rule, based on considerations of fairness, does not place the burden upon a litigant of establishing facts peculiarly within the knowledge of his adversary." *Schaffer*, 546 U.S. at 60 (quoting *United States v. N.Y., N.H. & H.R. Co.*, 355 U.S. 253, 256 n.5 (1957)); *see also Gomez v. Toledo*, 446 U.S. 635, 640-41 (1980) (holding that qualified immunity is an

affirmative defense to a § 1983 action in part because the facts that might support the defense are in the possession of the official asserting it).

Here, Green Tree has unique access to the information at issue: its purpose for making the calls to third parties and its basis, if any, when making follow-up calls, to reasonably believe the third parties did not originally provide and later had correct or complete information. Where the consumer challenges a communication from a debt collector to the consumer herself under the FDCPA, the consumer can be expected to attach and offer into evidence a copy of a written communication, *see, e.g.*, *McLaughlin v. Phelan Hallinan & Schmieg, LLP*, 756 F.3d 240, 243 (3d Cir. 2014) (examining letter from a law firm to a consumer), or to plead and testify about a verbal communication, *see, e.g.*, *Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589, 596 (E.D. Pa. 2012) (examining allegedly harassing telephone calls). Where the communication is from a debt collector to a third party, however, the consumer will have no first-hand knowledge of the conversation, and the third party cannot reasonably be expected to keep notes about or recall in detail random calls to his or her home. *See Lupyan v. Corinthian Colls. Inc.*, 761 F.3d 314, 322 (3d Cir. 2014) (recognizing that only the most "enterprising (or particularly compulsive) individual" would "maintain logs of incoming" correspondence).

This reality was laid bare when, at trial and in its briefing before us, Green Tree was unable to adduce any credible evidence—despite deposition testimony from multiple call-center employees, a corporate designee's pretrial deposition, and two days of trial testimony with a recess for the express purpose of allowing that same corporate designee

20

to search Green Tree's records yet again—that Mr. Heim originally gave incorrect or incomplete information or that the calls made to the Heims were for the purpose of acquiring new or updated location information about Evankavitch.[12] Moreover, when questioned at argument as to how Evankavitch would prove her claim if we were to remand and place the burden on her, Green Tree candidly acknowledged that her case would be difficult because Mr. Heim could not recall significant details about the conversations. Thus, if Green Tree's reading of the statute were correct, the absence of information—seemingly caused by its own lax record-keeping—would inure to its benefit, and the only party with any realistic ability to document the conversation would be motivated to do the opposite. Common sense dictates against this result.

The Federal Communications Commission's ("FCC") interpretation of the Telephone Consumer Protection Act ("TCPA"), an analogous consumer protection statute, rests upon the same premise. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to

---

[12] Nor was Green Tree able to adduce such evidence with regard to the calls to Evankavitch's daughter. Rather, because Evankavitch had placed two calls to Green Tree from Cheryl's cellphone (albeit, in one of them, to advise Green Tree that the number was her daughter's and should not be called), Green Tree urged the jury to conclude that the repeated calls to Cheryl did not constitute third-party calls at all.

a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii)). Put differently, the statute forbids, among other things, autodialing a person's cell phone, with two exceptions: consent and emergency.

Like the FDCPA, the TCPA is silent about the burden of proving these exceptions. However, pursuant to a declaratory ruling by the FCC, "the creditor should be responsible for demonstrating that the consumer provided prior express consent," 23 F.C.C.R. 559, 565 (Jan. 4, 2008), and the courts generally have placed the burden to prove these TCPA exceptions on the creditor, *see Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1253 (11th Cir. 2014); *Hartley-Culp v. Credit Mgmt. Co.*, No. 14-0282, 2014 WL 4630852, at *2 (M.D. Pa. Sept. 15, 2014); *Elkins v. Medco Health Solutions, Inc.*, No. 12-2141, 2014 WL 1663406, at *6 (E.D. Mo. Apr. 25, 2014). The rationale for treating these TCPA exceptions as affirmative defenses applies as well to the FDCPA: To the extent a caller seeks to avail itself of an exemption to a general ban on a certain category of calls, the caller is in the best position to generate and maintain records of those communications.

### 5. Other Fairness and Policy Considerations

The soundness of placing the burden on the debt collector is even more compelling when considered in the context of Congress's concern, expressly stated in 15 U.S.C. § 1692(a), with the "invasions of individual privacy" of consumers. *See Nat'l Commc'ns Ass'n*, 238 F.3d at 131 ("[T]he policies underlying the statute at issue are appropriately considered by courts when allocating the burden of proof."); *Ingraham*, 808 F.2d at 1079 (holding that

22

policy considerations are an appropriate factor in determining burdens of proof).

While Mr. Heim may not have understood the precise details of his conversations with Green Tree, he clearly understood the subject matter to be private and sensitive—the very type of interaction the FDCPA is intended to limit. *See, e.g.*, Tr. of Robert Heim, ECF No. 25-3, 9:14-17 ("If they were [calling] from Green Tree or whatever, [they would] ask if I would get Patty next door, I -- I wouldn't go. I wouldn't bother her with something like that. It's her own business."); *id.* at 13:6-9 ("I [kept] telling them, don't call this house again for a message to go next door. I said, I have my own problems and she has hers."). Saddling consumers with the burden to prove the absence of the debt collector's proper purpose or reasonable belief, however, would mean that consumers like Evankavitch would endure the embarrassment of such calls to neighbors and other third parties with no means of proving a FDCPA violation unless those third parties took copious notes or recalled the conversations in detail or the debt collector offered up testimony or documentary proof of its own violation in discovery. It would also run contrary to the tenet that "all else . . . being equal, courts should avoid requiring a party to shoulder the more difficult task of proving a negative." *Nat'l Commc'ns Ass'n*, 238 F.3d at 131; *see also Lupyan*, 761 F.3d at 322 ("The law has long recognized that such an evidentiary feat is next to impossible.").

In sum, allocating the burden to the consumer would be inconsistent with the Act's remedial purpose and our duty to construe it broadly, *see Lesher*, 650 F.3d at 997, and we

23

therefore will place the burden where it belongs: on the debt collector.[13]

## IV. Conclusion

We started our analysis with the default rule that a plaintiff bears the burden of proving her claim, but we end

[13] Green Tree makes additional arguments, including (1) because Congress crafted two explicit affirmative defenses in the Act, we should not read other, implicit defenses into it; and (2) our holding would create a burden-shifting scheme too complex for a jury to apply. Neither is persuasive. First, "the canon that expressing one item of a commonly associated group or series excludes another left unmentioned is only a guide, whose fallibility can be shown by contrary indications that adopting a particular rule or statute was probably not meant to signal any exclusion of its common relatives." *United States v. Vonn*, 535 U.S. 55, 65 (2002). That is, we will not assume that Congress's explicit apportionment of burden on a defendant in certain circumstances implies rejection of the apportionment of burden in other circumstances, unless we discern an indication that Congress considered and meant to exclude the latter. *See Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013). We discern no such intent in the provisions of the FDCPA at issue. Second, juries are more than capable of evaluating basic justifications and affirmative defenses. *See, e.g.*, *Dixon*, 548 U.S. at 17 (affirming conviction where a jury charge stated the defendant had to prove affirmative defense of duress ); *United States v. Dodd*, 225 F.3d 340, 343 (3d Cir. 2000) (affirming conviction where a jury charge "placed the burden of persuasion on the affirmative defense of justification on the defendant").

with the canon that, absent compelling reasons to the contrary, a party seeking shelter in an exception to a statute has the burden of proving it. We find no such compelling reasons in this case. Accordingly, we conclude that the District Court's jury instructions and *in limine* ruling properly placed the burden of proof on Green Tree, and we will affirm.