**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-2284
_____

SECRETARY UNITED STATES
DEPARTMENT OF LABOR

v.

NURSING HOME CARE MANAGEMENT INC.,
doing business as Prestige Home Care Agency;
ALEXANDER DORFMAN,

                Appellants
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:21-cv-2583)
District Judge: Honorable Chad F. Kenney
_____

Argued: June 5, 2024

Before: HARDIMAN, PORTER, and AMBRO,
*Circuit Judges*.

(Filed: January 31, 2025)

Colin D. Dougherty **[Argued]**
Fox Rothschild
980 Jolly Road, Suite 110
Blue Bell PA 19422

Samuel A. Haaz
Saltz Mongeluzzi & Bendesky
1650 Market Street
One Liberty Place, 52nd Floor
Philadelphia, PA 19103

Brett Berman
Fox Rothschild
Two Commerce Square
2000 Market Street, 20th Floor
Philadelphia PA 19103

*Counsel for Appellants*

Seema Nanda
Jennifer S. Brand
Rachel Goldberg
Shelley E. Trautman **[Argued]**
U.S. Department of Labor
200 Constitution Avenue, N.W.
Room N-2716
Washington, D.C. 20210

*Counsel for Appellee*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Nursing Home Care Management Inc. ("Prestige") operates a home healthcare service. It did not compensate its employees for time spent traveling between clients' homes. The District Court held this policy and other acts were willful violations of the Fair Labor Standards Act ("FLSA"). Prestige challenges the summary judgment as well as the District Court's decision to exclude Prestige's expert and refusal to sanction the Department of Labor ("Department"). We will affirm.

I

Prestige's business model relies on "Home Health Aides" ("HHA"), who provide healthcare services at Prestige's clients' homes. The Department previously investigated Prestige in 2017 for paying an employee straight time for overtime hours. In a conciliation, the Department sent Prestige's president, Alexander Dorfman, guides advising Prestige on the rules for compensating its employees. The Department began a larger investigation a year later culminating in this suit.

The Department sued Prestige for failing to pay HHAs for time spent traveling between client homes and for not keeping proper records of travel time; for failing to pay for breaks of twenty minutes or less; and for compensating employees for time worked over eighty hours in a biweekly period rather than forty hours per week. In ill succession for Prestige, the District Court excluded Prestige's expert witness and his report, denied Prestige's motion for sanctions against the Department, and granted summary judgment for the Department on every claim. Prestige's appeal raises seven questions.

As to FLSA liability, we ask first: when, if ever, is an HHA's travel time between client sites compensable? Second, did the District Court err in finding Prestige violated the FLSA's recordkeeping requirement at 29 U.S.C. § 211(c)? If not, we ask third: did the District Court err in finding Prestige acted willfully in five separate violations of the FLSA, thereby creating another year of liability for statute of limitation purposes under 29 U.S.C. § 255(a)? Fourth, did the District Court err in concluding that the Department satisfied its burden in estimating back wages?

We then address three questions under the abuse of discretion standard. Fifth, did the District Court abuse its discretion in declining to reduce or eliminate liquidated damages and back pay? Sixth, did the District Court abuse its discretion in excluding Prestige's expert and his report? Finally, did the District Court abuse its discretion in rejecting Prestige's sanctions motion against the Department for failing to produce a document that Prestige already had in its possession?

The most natural reading of the FLSA and its accompanying regulations requires compensation for work-related travel during the workday. Compensation is required both when the employee is on duty within the meaning of 29 C.F.R. § 785.15 and, when entering or exiting a period of off-duty rest, the travel is necessary and constitutes "part of" the employee's "principal activity." *Id.* § 785.38. Said differently, although off-duty time is itself non-compensable, the travel time necessary to travel between job sites is "'integral and indispensable' to a 'principal activity'" and is compensable. *IBP, Inc. v. Alvarez*, 546 U.S. 21, 37 (2005). We will affirm the District Court's conclusion that the travel time here was compensable. We reach the other issues in turn.

4

II

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1345. We have jurisdiction under 28 U.S.C. § 1291.

III

We exercise plenary review over the District Court's grant of summary judgment. *Ellis v. Westinghouse Elec. Co.*, 11 F.4th 221, 229 (3d Cir. 2021). That "mean[s] we review anew the District Court's summary judgment decision[s]" and "apply[] the same standard[s]" that it was required to apply. *Id.* Summary judgment is appropriate only where, construing all evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Ellis*, 11 F.4th at 229–30.

A

The FLSA regulates how employers compensate their employees for the "work" they perform. For instance, employers must pay their employees no less than the federal minimum wage for each hour of "work" and must pay employees no less than one and one-half times their regular rate of pay for each hour "worked" in excess of 40 hours in a workweek. 29 U.S.C. §§ 206(a), 207(a). The FLSA, however, does not define "work." *Alvarez*, 546 U.S. at 25. The Supreme Court has explained that an employee "works" within the meaning of the FLSA when the employee is engaged in some kind of activity that is "controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and

his business." *Id.* (quoting *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944)).

1

Prestige asks us to interpret the FLSA by looking to the Portal-to-Portal Act ("PPA"). Congress enacted the PPA in 1947 in response to a Supreme Court decision holding that time spent by employees walking from timeclocks near a factory entrance to their work stations was compensable time at work. *Anderson v. Mount Clemens Pottery Co.*, 328 U.S. 680 (1946). The PPA eliminates liability for employers who do not compensate employees for time spent "walking, riding, or traveling to and from the actual place of performance of the [employee's] principal activity or activities" and doing "activities which are preliminary to or postliminary to said principal activity or activities." 29 U.S.C. § 254(a).

But the PPA only covers transport to the job site "which occur[s] either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." *Id.* The time that elapses *between* the day's start and end is not implicated by the text of the PPA. The Department's regulations confirm this. It defines a workday as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(b). The PPA does not cover any "time within that period," even if an employee does not "engage[] in work throughout all of that period" and has "a rest period or a lunch period" instead. *Id.*

The time at issue arose within the workdays of Prestige's HHAs. The Department does not challenge travel time before

6

or after the start of home health care, but for travel in between the start of the first client's appointment and the end of the last client's appointment. Prestige attempts to reframe the regulations in its favor, insisting that, while a split shift constitutes a single workday, a "'continuous workday' may be broken up with non-compensable time, such as 'off-duty' or 'meal break' periods." Appellants' Reply Br. at 6 (citing 29 C.F.R. §§ 785.16, 785.19). But the regulations Prestige cites simply say these periods "are not worktime." 29 C.F.R. § 785.19. They do not undermine the continuous workday rule. And neither regulation could extend the statutory authority of the PPA, which limits itself to the start and end of the workday. 29 U.S.C. § 254(a).

While the Supreme Court and our sister circuits have discussed the relationship between the PPA and the FLSA, they have done so in cases that questioned whether particular activities were part of the first or last principal activity of the workday. *See, e.g.*, *Alvarez*, 546 U.S. at 24 ("don[ning] protective clothing . . . before they engage in the" principal activity); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 447 (2016) (same); *Perez v. Mountaire Farms, Inc.*, 650 F.3d 350, 366–67 (4th Cir. 2011) (same); *Singh v. City of New York*, 524 F.3d 361, 367–68 (2d Cir. 2008) (commuting to job site while carrying work items); *Smith v. Aztec Well Servicing Co.*, 462 F.3d 1274, 1290 (10th Cir. 2006) (same); *In re Amazon.com, Inc., Fulfillment Ctr. Fair Labor Standards Act (FLSA) and Wage and Hour Litig.*, 852 F.3d 601 (6th Cir. 2017) (post-shift security checkpoint). When travel occurs "during a continuous workday . . . [it] is covered by the FLSA" and the FLSA alone. *Aztec Well*, 462 F.3d at 1289 (quoting *Alvarez*, 546 U.S. at 37).

7

2

We now turn to the FLSA and the Department's regulations. To determine whether Prestige's HHAs are entitled to compensation for travel, we ask two questions. First, is travel compensable when the employee lacks the time to go off duty? Second, if the employee has the time to go off duty, must he still be compensated for the time necessary to travel between job sites?

*a*

Travel time is compensable when an employee lacks the time to go off duty. Once the workday has commenced, an employee is entitled to compensation even if he is not working at every moment of the day; for instance, "a messenger who works a crossword puzzle while awaiting assignments . . . and a factory worker who talks to his fellow employees while waiting for machinery to be repaired are . . . working during their periods of inactivity." 29 C.F.R. § 785.15. Indeed, "[r]est periods of short duration, running from 5 minutes to about 20 minutes . . . *must* be counted as hours worked." *Id.* § 785.18 (emphasis added).

These examples establish a general rule: so long as "the employee is unable to use the time effectively for his own purposes," he is on duty and entitled to compensation. *Id.* § 785.15. Thus, the parties and District Court are mistaken by solely asking whether travel time for on-duty employees is a "principal activity." § 785.38. The Department's travel regulation provides that travel that is a principal activity "*must* be counted as hours worked." *Id.* (emphasis added). It does not bar compensation for travel hours that are not part of the principal activity, but only references the PPA's bar on post-work

travel compensation. *Id.* So where an employee is on duty and traveling, he is entitled to compensation.

*b*

When, if ever, is travel from a period of *off*-duty rest compensable? We conclude that an employer must compensate an employee for time spent in travel after an off-duty period, but only for the time necessary to travel between job sites.

An employee goes off duty when he "is completely relieved from duty" for a period "long enough to enable him to use the time effectively for his own purposes." *Id.* § 785.16(a). These "are not hours worked." *Id.* Similarly, an employee is off duty if "he is definitely told in advance that he may leave the job and that he will not have to commence work until a definitely specified hour has arrived." *Id.*

In most cases, an employee is either on duty and compensated or off-duty and not compensated. *See id.* § 785.16(b) (a truck driver who "is completely and specifically relieved from all duty" for a six-hour period "is not working . . . . He is waiting to be engaged."). The District Court and the Department cite a Tenth Circuit case with a similar premise: bus drivers who had to ride a shuttle bus during a split-shift to reach the site of the second shift were on duty because they "[were] not free to do whatever they wish[ed]." *United Transp. Union Local 1745 v. City of Albuquerque*, 178 F.3d 1109, 1119–20 (10th Cir. 1999). The facts are slightly different here. Prestige's off-duty employees can go wherever they want and begin their travel to a client's home from wherever they want, so it is harder to say when they return to on-duty status.

9

The Department's travel rule provides a test to evaluate whether travel time is compensable: when an employee is entering or exiting an off-duty period, travel time is compensable if it is "part of [the employee's] principal activity." 29 C.F.R. § 785.38. The Department defines principal activities as those "which the employee is employed to perform." *Id.* § 790.8(a) (quotation marks omitted). In turn, the Supreme Court has said that "any activity" is a principal activity if it is "integral and indispensable" to another principal activity. *Alvarez*, 546 U.S. at 37. Last, "an activity is not integral and indispensable . . . unless it is an intrinsic element of those activities and one with which the employee cannot dispense if he is to perform those activities." *Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27, 35 (2014).

The District Court applied this test to the whole of Prestige's HHAs. Doing so, however, was unnecessary for those HHAs who were already on duty and muddled the question of whether employees who travelled longer than necessary after traveling off-route during an off-duty period are still entitled to compensation. Those employees are entitled to compensation, but only for the travel that was necessary to travel between job sites. By necessary, we mean travel which is "integral and indispensable." *Alvarez*, 546 U.S. at 37.

When one of Prestige's HHAs travels prior to or following an off-duty rest period, he or she must be compensated because, as the District Court observed, it is in the name of the occupation: "*home* health aide[s]." J.A. 12. These are employees who "could not provide their services of caring for clients in clients' *homes*" without at least some travel. *Id.* That must be "integral and indispensable," because an HHA must always spend time traveling on a workday if he or she has multiple clients in different locations. *Alvarez*, 546 U.S. at 37. This is

10

exactly the type of traveling worker that the Department's travel rule envisions: one who "travel[s] from job site to job site during the workday" is one whose travel "must be counted as hours worked." 29 C.F.R. § 785.38. Such travel is therefore "integral and indispensable," and thus a compensable "principal activity." *Alvarez*, 546 U.S. at 37.

Travel is *not* necessary, for example, when it would not be "integral and indispensable" to the principal activities to which the employee is assigned. Said differently, an employee's marginal travel that is unnecessary to move between job sites is not compensable. Some of Prestige's employees traveled home, to another job, or went shopping. Such travel is not entitled to compensation.

4

Prestige says this theory of compensation is "unworkable" and "would require estimation of the compensable portion of travel" in a manner that would violate the FLSA. Appellants' Br. at 29. We disagree. It is true that an employer may violate the FLSA by "[e]stimating hours worked." *Williams v. Tri-Cnty. Growers, Inc.*, 747 F.2d 121, 128 (3d Cir. 1984). But this misses the point. An employer under the FLSA must "make, keep, and preserve" records of "[employees] and of the wages, hours, and other conditions and practices of employment." 29 U.S.C. § 211(c). Prestige's duty is simply to make a record so that the employer and employee have "the most probative facts concerning the nature and amount of work performed" to provide for a clean resolution of the dispute before them. *Mount Clemens*, 328 U.S. at 687.

Room for estimation is made in the text of the FLSA's accompanying regulations. For instance, an employer may use

11

time clocks or round "to the nearest one-tenth or quarter of an hour" to ensure employees are fully compensated. 29 C.F.R. § 785.48. Neither method is required, but the Department permits both "provided that [they are] used in such a manner that . . . will not result, over a period of time, in failure to compensate the employees properly." *Id.*

Prestige's other arguments against compensating employee travel time come up short. Prestige argues "travel is not closely related to the productive work [the HHAs] are employed to perform . . . feeding, bathing, providing medication, and dressing their clients." Appellants' Br. at 24. It is true that an act which is too far "removed from the productive activity" may not be integral. *Alvarez*, 546 U.S. at 42. But an activity "need not be *predominant* in some way over all other activities" to qualify as principal. 29 C.F.R. § 790.8 (emphasis added). Prestige's HHAs are hired to travel and provide care to clients where they reside, rather than meeting them in hospitals or clinics. Because the HHAs cannot apparate, the "particular circumstances" of this case and "common sense" dictate that travel is integral and indispensable to providing *in-home* healthcare. *Id.* § 785.14 (quoting *Cent. Mo. Tel. Co. v. Conwell*, 170 F.2d 641, 646 (8th Cir. 1948)) (discussing waiting time).

Prestige also contends that the District Court should have adopted the Federal Circuit's position on travel time in *Bridges v. United States*, 54 F.4th 703 (Fed. Cir. 2022). But that case addressed the claims of federal employees, who are subject to regulation by the Office of Personnel Management and not the Department of Labor. 29 U.S.C. § 204(f). So, it is inapposite.

Finally, Prestige suggests we should not consider travel necessary merely because, "[i]f an HHA did not want to travel

but still serve multiple clients, they could (and did) schedule visits . . . in the same building" and could also choose whether to accept a new client who was in a different location. Appellants' Br. at 34. Alternatively, Prestige contends there is a genuine, material factual dispute over whether its HHAs were "required" to travel. *Id.* at 30. But work that is "suffered or permitted is work time," no matter the employee's reason for taking on more work. 29 C.F.R. § 785.11. There is no genuine dispute that Prestige permits its employees to structure their workdays in a manner that necessitates travel, so it is irrelevant if they are required to travel. On these grounds, their work is compensable.

B

Prestige next challenges the District Court's holding that Prestige breached the FLSA's requirement that an employer "make, keep, and preserve" accurate employment records. 29 U.S.C. § 211(c). The District Court did not err. The travel time at issue was compensable, so Prestige had a duty to maintain adequate records. *Mount Clemens*, 328 U.S. at 687.

C

Next, we consider the District Court's finding that Prestige willfully violated the FLSA. The District Court found that Prestige willfully violated the FLSA through the following five actions: "(1) [its] failure to compensate for travel time; (2) [its] failure to compensate for breaks of 20 minutes or less; (3) [its] compensation [scheme for] employees who worked overtime; (4) [its] compensation of dual-service employees; and (5) [its] recordkeeping practices." J.A. 26. For each violation, a finding of willfulness extends the period of liability from two years to

13

three years. 29 U.S.C. § 255(a).[1] The burden of showing willfulness is on the plaintiff. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135 (1988).

A violation is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.* at 133. The line between willful and non-willful conduct can be narrow. On one hand, a defendant who "act[s] reasonably and in good faith in attempting to determine whether its plan would violate the [FLSA]" does not act willfully. *Trans World Airlines, Inc. v. Thurston*, 469 U.S. 111, 129 (1985). It is also insufficient to show merely that "an employer knew that the FLSA was in the picture." *McLaughlin*, 486 U.S. at 132 (quotation marks omitted). Instead, willfulness is "voluntary, deliberate, [or] intentional." *Id.* at 133 (quotation marks omitted). It arises where one who "ha[s] actual notice of the requirements of the FLSA" goes

---

[1] Prestige failed to preserve its challenge to the third willfulness holding (regarding its eighty-hour overtime scheme) on appeal. An appellant must provide his "contentions and the reasons for them, with citations to the authorities and parts of the record on which [he] relies." Fed. R. App. P. 28(a)(8)(A). A brief that fails to do so is "passing and conclusory" in nature and "do[es] not preserve an issue for appeal." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 821 n.10 (3d Cir. 2006). While Prestige references the scheme in its argument on damages, it never contends that its violation was not willful. Nevertheless, we address all five willfulness holdings.

14

forward in violating them. *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 967 (6th Cir. 1991).

First, Prestige behaved with at least reckless disregard to whether FLSA required it to compensate its HHAs for travel time. While the Department did not tell Prestige whether travel was compensable, it *did* inform Prestige that any time where its HHAs were "providing services or [were] required to be available to provide services" was time worked. J.A. 971. So Prestige therefore at least acted with reckless disregard of the fact that its HHAs' necessary travel was protected and compensable under the FLSA.

While we agree Prestige willfully violated the FLSA with respect to its failure to compensate employee travel time, we disagree with the District Court's rationale that, because "[Prestige knew] that [it has] taken a position as to travel time that is directly contrary to that of the Department," it acted willfully. J.A. 23–24. That would give the Department unlimited fiat to decide the legal, statutory-interpretation question of what conduct the FLSA prohibits so far as willfulness is concerned. But the Department's legal opinions do not carry that weight. *See, e.g.*, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 394 (2024); *Sackett v. EPA*, 598 U.S. 651, 681 (2023). Likewise, we will not turn the FLSA willfulness standard into a demand to seek legal advice from the Department. The Supreme Court expressly rejected such a requirement in *McLaughlin* and indicated that a "completely good-faith but incorrect assumption" of compliance is not willful. 486 U.S. at 134–35.

Second, we agree that Prestige behaved with reckless disregard in failing to compensate breaks of twenty minutes or less. Prestige is correct that the District Court erred in

15

concluding willfulness existed simply because Prestige violated the FLSA and knew (without alleging knowledge of the law) that Prestige's employees were not being compensated for such short break periods. If we were to accept the District Court's contention that breach of "the clear black letter law of the FLSA constitutes reckless disregard," J.A. 25, it would render the FLSA's two-year statute of limitation for mere breach superfluous. We will not adopt a reading "that would render" a whole clause "superfluous." *United States v. Cooper*, 396 F.3d 308, 312 (3d Cir. 2005). Willfulness requires more than a mere violation of the FLSA. *See McLaughlin*, 486 U.S. at 134–35.

But the record shows Prestige had notice of the FLSA regulations providing compensation for breaks. Dorfman testified that Prestige compensated HHAs for breaks taken during client visits. There is no principled distinction between a five-minute break while with the client and a five-minute break between clients. That, together with Prestige's notice that short-distance travel was compensable as part of the HHAs' service to Prestige, demonstrates reckless disregard for the FLSA's statutory and regulatory protections.

Third, Prestige knew or had reckless disregard for the fact that its overtime compensation scheme violated FLSA. Prestige's 2017 conciliation with the Department came about because Prestige paid an employee straight time for overtime hours. The documents provided to Prestige informed it that hourly employees were to be paid "for each hour worked in a workweek in excess of the maximum allowable." J.A. 1001. The documents also enumerated exemptions for overtime pay; among these, that "[h]ospitals and residential care establishments," and no other kind of business, could utilize a biweekly, eighty-hour system for overtime. J.A. 995. Prestige was on

notice that employees were to be paid on a weekly, forty-hour schedule *unless* they fell into a category which Prestige does not claim. That Prestige's notice came in the context of violating the FLSA's overtime rules is also relevant. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 919 (9th Cir. 2003). There is no genuine dispute of material fact that Prestige knowingly or recklessly violated the FLSA's overtime compensation requirement.

Fourth, Prestige behaved with reckless disregard in failing to properly compensate its dual-service employees for overtime. Dorfman testified Prestige used a system to weigh the separate pay rates for dual-service employees, but the District Court concluded, relying on Prestige's own "records[,] . . . that [it] did *not* actually" do so. J.A. 25. Prestige does not contest that finding or explain the discrepancy.

Fifth, Prestige acted with reckless disregard for the FLSA's recordkeeping requirements in failing to keep records of travel time. It did so knowing the FLSA requires employers to keep records of hours worked overtime, including "the hours worked each day, and the total hours worked each week." J.A. 26 (citing 29 C.F.R. § 516.2).

D

Prestige also challenges the District Court's conclusion that the Department met its burden in calculating back wages owed as a result of Prestige's violations. The FLSA provides that an employer who violates the FLSA's overtime provision "shall be liable" for "unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). The Supreme Court has applied a burden-shifting

17

framework to calculate damages. In a case such as this, where the employer has inadequate records,

> an employee has carried out his burden if he proves that he has in fact performed work for which he was improperly compensated and if he produces sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference. The burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence. If the employer fails to produce such evidence, the court may then award damages to the employee, even though the result be only approximate.

*Mount Clemens*, 328 U.S. at 687–88. The employee's initial burden "is merely to present a prima facie case," and nothing more. *Reich v. Gateway Press, Inc.*, 13 F.3d 685, 701 (3d Cir. 1994).

We have already concluded Prestige's records were inadequate. And we explain below that the District Court did not abuse its discretion in excluding Prestige's expert witness. Accordingly, we conclude Prestige failed to show "the precise amount of work performed" and to "negative the reasonableness of the inference to be drawn from the employee's evidence." *Mount Clemens*, 328 U.S. at 687–88. The only objection that remains is whether the Department "produce[d] sufficient evidence." *Id.* at 687.

The Supreme Court has never contended that a damages calculation under *Mount Clemens* must be perfectly accurate, because, inevitably, these cases pit employees who might have

18

access to work records against companies who should but do not. *Bouaphakeo*, 577 U.S. at 456. When an employer's inadequate records create "an evidentiary gap," the Supreme Court has held that "representative evidence" forms a "permissible" basis for determining damages. *Id.* at 450, 456. That includes "employee testimony," video evidence of the unpaid-for work, and estimates of work time provided by an expert witness. *Id.* at 450.

Prestige has provided work records for every employee, but critically neglects to include travel time for each and every one. The Department can estimate the travel time for some employees, but for others the estimate is more difficult. The Department limned a prima facie case that the back wages are what it has estimated, but Prestige failed to counter. The Department's approximation, though not perfect, is sufficient.[2]

## IV

We now turn to the final three issues, which are governed by the abuse of discretion standard. We must affirm "unless there is a definite and firm conviction that the court below

---

[2] To challenge the award amount, Prestige claims its employees received lawful overtime compensation through its biweekly overtime scheme. In doing so, however, it relies on evidence absent from the record, which we generally "cannot consider." *Martin v. Adm'r N.J. State Prison*, 23 F.4th 261, 265 n.1 (3d Cir. 2022) (quoting *In re Cap. Cities/ABC, Inc's Application for Access to Sealed Transcripts*, 913 F.2d 89, 96 (3d Cir. 1990)). We decline to consider the new evidence.

committed a clear error of judgment." *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008) (quotation marks omitted).

## A

Prestige contests the evidentiary basis to award backpay and liquidated damages. 29 U.S.C. § 260 provides that a "court may, in its sound discretion, award no liquidated damages or award any amount thereof" up to the double damages contemplated by § 216. Section 260 permits a court to decline or limit liquidated damages "if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." The employer's burden is "plain and substantial." *Martin v. Cooper Elec. Supply Co.*, 940 F.2d 896, 907 (3d Cir. 1991).

An act is not in good faith where the employer lacks "an honest intention to ascertain and follow the dictates of the [FLSA]." *Marshall v. Brunner*, 668 F.2d 748, 753 (3d Cir. 1982). A willful violator necessarily lacks honest intent to abide by the FLSA. *A-One Med. Servs.*, 346 F.3d at 920. Section 260 uses the conjunctive 'and'—an employer must have "good faith *and* . . . reasonable grounds." (Emphasis added). So where an employer has reasonable grounds but lacks good faith, or possesses good faith without reasonable grounds, the District Court cannot limit or eliminate liquidated damages. Because Prestige's FLSA violations were willful, it lacked good faith; therefore, the District Court did not abuse its discretion in awarding backpay and liquidated damages.

B

Prestige challenges the District Court's decision to exclude Robert Crandall's expert's report. A court must ensure "any and all expert testimony or evidence is not only relevant, but also reliable." *Pineda*, 520 F.3d at 243 (quoting *Kannakeril v. Terminix Int'l*, 128 F.3d 802, 806 (3d Cir. 1997)). The burden is on the proponent to show that the witness' "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a).

Normally, courts are loath to outright dismiss an expert. Though the burden is on the proponent, we have said "Rule 702 . . . has a liberal policy of admissibility." *Pineda*, 520 F.3d at 243 (quoting *Kannakeril*, 128 F.3d at 806). An expert is unhelpful, though, if he states incorrect law. "Incorrect statements of law are no more admissible through 'experts' than are falsifiable scientific theories." *Herbert v. Lisle Corp.*, 99 F.3d 1109, 1117 (Fed. Cir. 1996).

Crandall made several errors of law. First, he assumed—without evidence—that travel was "non-work" which "should be paid at minimum wage." J.A. 1 n.1. Though we clarify today when employees who go off duty are entitled to compensation for necessary travel, the law was clear that certain "non-work"—such as short rest periods or waiting at attention—were compensable at the employees' usual rates. 29 C.F.R. §§ 785.15, 785.18.

Second, Crandall assumed that overtime pay would be weighted between the minimum wage and the employees' normal rate. In order to pay employees at a weighted average rate, however, the employer must pay the employees according to

21

separate rates for different activities. *Id.* § 778.115. Prestige never established separate rates for its HHAs. It would confuse the trier of fact, therefore, to suggest Prestige could have paid them less than time-and-a-half.

Third, Crandall excluded from his compensation analysis all "shifts where [the] incremental gap plus travel time is 10 minutes or less per shift." J.A. 1 n.1. Crandall did so because, he thought, the District Court might not compensate this time as "*de minimis*." *Id.* This notion comes from *Mount Clemens*, which suggests "a few seconds or minutes of work" left uncompensated is a "trifle[]" that the FLSA will not compensate, even though it might qualify as hours worked. 328 U.S. at 692; *see* 29 C.F.R. § 785.18 (rest). We accept that doctrine, but with critical caveats: an employer has the burden of showing that time is *de minimis* in light of several factors, including unfair surprise to the plaintiff and "the party who controls the relevant information." *Sec'y U.S. Dep't of Lab. v. E. Penn Mfg. Co.*, 123 F.4th 643, 648 (3d Cir. 2025) (citing *Evankavitch v. Green Tree Servicing, LLC*, 793 F.3d 355, 361 (3d Cir. 2015)). Prestige does not contend the time at issue is *de minimis*, so Crandall's calculation rests on a false premise.

Crandall's testimony, then, would erroneously tell the jury that the HHAs were entitled to a rate of pay that the law does not permit; that their overtime pay was based on that same unlawful rate of pay; and that the period for which they could be compensated was less than what the law required. These legal errors undermine the core of Crandall's testimony. Although they were not the only subjects of his testimony, these errors are misleading enough to warrant the District Court's decision to exclude Crandall. We cannot find its decision to be an abuse of discretion.

Similarly, the District Court did not abuse its discretion in declining to hold a *Daubert* hearing. It is "obvious[]" that a hearing is not required for an expert. *Padillas v. Stork-Gamco, Inc.*, 186 F.3d 412, 418 (3d Cir. 1999). That decision "rests in the sound discretion of the district court." *Id.* Finding no abuse of discretion, we will affirm.

C

The District Court declined to award sanctions against the Department for failure to produce a document that Prestige repeatedly requested. Federal Rule of Civil Procedure 37 provides that a court may sanction a party if that "party fails to provide information . . . as required by Rule 26(a) or (e) . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). The District Court did not explain its reason for denying sanctions, but we conclude that its decision was not an abuse of discretion.

The District Court did not make a conclusion of law, so we are left to ask whether the decision was "a clearly erroneous assessment of the evidence." *Grider v. Keystone Health Plan Cent., Inc.*, 580 F.3d 119, 134 (3d Cir. 2009) (quoting *Bowers v. Nat'l Collegiate Athletic Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007)). We cannot conclude the District Court abused its discretion on these facts. Although Prestige specifically requested these documents, it had them in its possession for several years. Dorfman testified that he received them via email during the 2017 conciliation. Had the Department produced these documents again in the proceeding, they would have had little or no impact. The documents make no mention of travel and only say that time spent off-duty is not compensable. They do not offer any guidance as to travel-time compensation nor say whether

23

such time is compensated. On these facts, we decline to disturb the District Court's holding.

V

For all these reasons, we will affirm the District Court's judgment.